**Opinion filed January 27, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00039-CR

_____

## CRYSTAL MICHELLE WATSON, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 90th District Court**

**Young County, Texas**

**Trial Court Cause No. 09159**

### O P I N I O N

Seven-year-old Tanner Joshua Monk was mauled to death by dogs. The jury convicted the dogs' owners, Crystal Michelle Watson and Jack Wayne Smith, of the offense of attack by dog resulting in death. The jury assessed punishment at confinement for seven years and a $5,000 fine. Watson appeals.[1] We affirm.

---

[1]We note that Watson and Smith were tried together and have each filed an appeal urging the same issues. On this same date, we have affirmed Smith's conviction. *See Jack Wayne Smith v. State*, No. 11-09-00050-CR (Tex. App.—Eastland Jan. 27, 2011, no pet. h.).

*Issues*

Appellant presents four issues for review. In the first issue, she contends that the statute under which she was convicted is unconstitutionally vague. In the second issue, she contends that her constitutional rights to a unanimous jury verdict and to be convicted by a substantial majority were violated. In the third issue, appellant challenges the sufficiency of the evidence to support her conviction. In the final issue, appellant complains of the admission of evidence regarding the previous actions of one of her dogs.

*Constitutionality of Statute*

Appellant was charged and convicted of an offense under TEX. HEALTH & SAFETY CODE ANN. § 822.005(a)(1) (Vernon 2010), which provides:

> (a) A person commits an offense if the person is the owner of a dog and the person:
>
> > (1) with criminal negligence, as defined by Section 6.03, Penal Code, fails to secure the dog and the dog makes an unprovoked attack on another person that occurs at a location other than the owner's real property or in or on the owner's motor vehicle or boat and that causes serious bodily injury, as defined by Section 1.07, Penal Code, or death to the other person.

A person acts with criminal negligence when the person "ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur." TEX. PENAL CODE ANN. § 6.03(d) (Vernon 2003). The legislature provided that "secure" as used in Section 822.005(a)(1) "means to take steps that a reasonable person would take to ensure a dog remains on the owner's property, including confining the dog in an enclosure that is capable of preventing the escape or release of the dog." TEX. HEALTH & SAFETY CODE ANN. § 822.001(4) (Vernon 2010).

In her first issue, appellant challenges the constitutionality of this statute, arguing that it is vague on its face and as applied to her.[2] When confronted with an attack upon the constitutionality of a statute, we presume that the statute is valid and that the legislature has not

---

[2] The State asserts that appellant has not preserved this issue for review. We disagree. Appellant objected at a pretrial hearing that the statute was overbroad and vague and failed to provide proper notice. Appellant again objected after the jury verdict on guilt/innocence but before the punishment stage began that the statute was unconstitutionally vague, specifically complaining about the lack of definitions for the terms "unprovoked" and "attack." We hold that the issue was preserved for our review. *See* TEX. R. APP. P. 33.1.

acted unreasonably or arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). A statute will be declared unconstitutionally vague if "its prohibitions are not clearly defined." *State v. Markovich*, 77 S.W.3d 274, 279 (Tex. Crim. App. 2002) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). A statute must provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. *Id.*; *see Bynum v. State*, 767 S.W.2d 769, 773 (Tex. Crim. App. 1989).

Section 822.005(a)(1) prohibits a person, acting with criminal negligence, from failing to secure a dog owned by the person. The acts prohibited by Section 822.005(a)(1) are defined in such a way as to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. We hold that Section 822.005(a)(1) provides fair notice to citizens as to the type of conduct that is proscribed: failing to secure your dog when you ought to be aware of the risk that the dog will, without provocation, attack a person. The court in *State v. Taylor*, 322 S.W.3d 702 (Tex. App.—Texarkana 2010, pet. filed), upheld Section 822.005(a)(1) in the face of an attack challenging the statute for unconstitutional vagueness. Likewise, we hold that it is not unconstitutionally vague on its face.

Appellant specifically argues that the statute is unconstitutionally vague because the terms "unprovoked" and "attack" are not defined. A statute is not unconstitutionally vague merely because the words or terms used are not specifically defined. *Bynum*, 767 S.W.2d at 774; *Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988). Instead, the words must be read in the context in which they are used and construed according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005). The undefined terms about which appellant complains – "unprovoked" and "attack" – relate to the actions of the dog, not the conduct of the person, and are such that they may be given their common meaning.

Appellant also implies that the statute is unconstitutional as applied in this case because the attack in this case may have begun or occurred on the real property at which appellant lived. The evidence showed, however, that Tanner would have bled out quickly from any of the three fatal wounds, that Tanner's body and blood were located in a ditch across the road from appellant's residence, and that there was no blood or drag marks indicating that the deadly attack occurred anywhere other than the ditch. Even if the attack began at appellant's residence, it is clear from the evidence that Tanner was fatally attacked at a location other than appellant's

residence. We hold that Section 822.005(a)(1) is not unconstitutional on its face or as applied in this case. Appellant's first issue is overruled.

## Unanimous Verdict

In her second issue, appellant argues that her conviction violates the unanimous jury guarantee of the Texas Constitution and the "substantial majority" requirement of the Sixth Amendment. Appellant's argument under this issue also relates to the definition of "attack" and the meaning that the jurors may have given that term. Appellant asserts that, because some jurors could have believed the attack initially occurred on her property and then continued across the road while other jurors could have believed the attack occurred entirely off her property, the verdict was not necessarily unanimous. We disagree.

The trial court's charge to the jury required that each juror, in order to find appellant guilty, find beyond a reasonable doubt that appellant's dog or dogs "made an unprovoked attack" that "occurred at a location other than the owners [sic] real property." Pursuant to this charge, regardless of the jurors' beliefs concerning where the attack began, each juror was required to find that an attack occurred somewhere off appellant's premises. The jury's verdict, therefore, must have been unanimous as to that element of the offense. Appellant's second issue is overruled.

## Sufficiency of the Evidence

In her third issue, appellant argues that the evidence is legally and factually insufficient to support her conviction. Appellant specifically asserts that the evidence is insufficient as to the lack of provocation and the location of the attack.

We note at the outset of our analysis that the Texas Court of Criminal Appeals has now held in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), that there is "no meaningful distinction between the *Jackson v. Virginia*[3] legal-sufficiency standard and the *Clewis*[4] factual-sufficiency standard"; that the *Jackson v. Virginia* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt"; and that "[a]ll other cases to the contrary, including *Clewis*, are overruled." *Brooks*, 323 S.W.3d at 895, 902, 912 (footnotes added). Accordingly, a challenge to the factual sufficiency of the evidence is no

---

[3] *Jackson v. Virginia*, 443 U.S. 307 (1979).

[4] *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

4

longer viable. We also note that appellant did not have the benefit of the opinion in *Brooks* when this case was briefed. We will review appellant's factual sufficiency challenge under the legal sufficiency standard set forth in *Jackson v. Virginia*. Under this standard, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307; *Brooks*, 323 S.W.3d at 899.

The record shows that Tanner lived in a rural area around the corner from appellant and that he had been playing with appellant's daughter and another girl most of the day prior to the attack. The children had been going back and forth between the residences on a trail that went through an opening in the wire fence that separated the properties. Two of appellant's dogs played with the children and followed them back and forth. About 3:00 p.m., appellant called Tanner's mother and asked that she send the girls home. According to Tanner's mother, Tanner followed the girls back to appellant's residence to retrieve a water gun. After the girls walked to appellant's residence, appellant and the girls drove to Eastland and were apparently not home when the attack occurred. Shortly after 4:00 p.m., Tanner's body was found in a ditch by Sharon Rogers, who lived down the road from appellant.

Rogers testified that she saw a little boy lying in the ditch with a "brown puppy" nearby. When she realized that the boy was not moving, she backed up and yelled at the boy, but he did not respond. Rogers got out of her car to check on the boy. She walked to the rear and around the back of her car but was unable to get to the boy because two big, white pit bull dogs came running at her and chased her back into her car. She drove to the house where the dogs belonged, and they followed. She honked her horn, but nobody came out of the house. She drove back, parked near the boy, called a neighbor who did not answer, and then called 9-1-1. While she sat in her car waiting for help to arrive, the two pit bulls were behind her, "barking and biting at her car." Rogers noticed that the male pit bull's forehead was covered in blood.

Two deputies arrived, followed shortly by an ambulance. As Deputy Caleb Hodges got out of his vehicle, the white female pit bull came running at him, teeth showing and growling. Deputy Hodges fired one shot and killed that dog, but he noticed a second white dog take off running toward appellant's residence. Deputy Adam Babilon subsequently shot and killed the brown juvenile-age dog that Rogers referred to as a puppy. The white male pit bull and a small black and white dog were subsequently taken from appellant's residence by animal control.

Tanner was already dead and rigor mortis had begun to set in when the deputies and the paramedic arrived. According to the medical examiner, Tanner's injuries were characteristic of an animal attack, particularly a carnivore. Most of Tanner's injuries occurred right around the time of his death, but some were postmortem. The medical examiner listed the cause of death as lacerations of vasculature (blood vessels) of the neck due to "mauling by canines." The injuries to Tanner's neck included damage to the left carotid artery, the external and internal jugular veins on both sides of the neck, and a deep artery just to the right of the spine. According to the medical examiner, Tanner would have bled to death in less than "two to three minutes." The medical examiner testified that some of the injuries on Tanner's legs and arms could have been inflicted elsewhere but that the major injuries on Tanner's neck were inflicted "right around where he's found if that's the limit of the blood deposit."

Authorities conducted a search of the area. One of Tanner's shoes was located in appellant's yard; it had a small amount of blood on the rubber part next to the bottom of the shoe. Tanner's other shoe was never found. The ground around Tanner's body was soaked with blood. There were no drag marks, no broken grasses, and no blood spatters that would indicate the dogs attacked Tanner anywhere other than in the ditch where Tanner was found, which was 99.5 feet from appellant's gate. The gate was open, and the fence surrounding the property was not capable of confining a dog. Tests showed that all four of appellant's dogs had Tanner's blood on them. However, because the dental measurements of the two smaller dogs were similar and the two pit bulls' almost identical and because the bite marks on Tanner's body were so numerous and commingled, the forensic dentist was not able to match the marks on Tanner's body to a specific dog.

Though there was no evidence that appellant's dogs had ever bitten a person before, evidence was introduced that the male pit bull had recently been given to appellant and that appellant was told by the previous owner that that dog had been involved in a dog fight in which a neighbor's dog was killed. The previous owner testified that, as far as she knew, the dog had not been aggressive toward any humans. Appellant told Deputy Hodges that Tanner and the girls had played there all day without any trouble between the dogs and the children and that the dogs had never attacked any human. Appellant did recall that, one time when the female pit bull was pregnant, she growled as Tanner was coming through the fence.

With respect to evidence regarding the lack of provocation, the testimony showed that Tanner loved animals and was very good with dogs. Tanner's mother testified that she had never seen him do anything to provoke a dog. Testimony also showed that the deputies found no sticks or water guns near Tanner's body or anything else that would indicate that Tanner was provoking the dogs. Furthermore, the jury could have considered the unprovoked, aggressive actions of the dogs toward both Rogers and Deputy Hodges when they got out of their vehicles. With respect to evidence regarding the location of the attack, the evidence indicated that, when the fatal wounds were inflicted, Tanner was in the ditch where his body was found. The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979). As such, the jury was free to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). A rational jury could have found that the attack was unprovoked and that it occurred at a location other than appellant's property. Appellant's third issue is overruled.

*Prior Bad Acts of Dog*

In her fourth issue, appellant argues that the trial court abused its discretion in admitting into evidence the prior bad acts of the male pit bull. Over appellant's objections, the trial court permitted witnesses to testify that, in its previous owner's neighborhood, the dog had knocked an elderly man down and had been in dog fights resulting in the death of two small dogs. Appellant objected at trial that the dog's prior bad acts were irrelevant, unduly prejudicial, and inadmissible under TEX. R. EVID. 401, 403, and 404. Contrary to the State's assertion, appellant's contention on appeal, that the dog's prior bad acts were inadmissible under Rule 404(b), was preserved for review.

Rule 404(b) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

We are of the opinion that Rule 404(b) is not applicable to the prior bad acts of a dog. The rule specifically relates to "a person." Moreover, the dog's prior bad acts were admissible to show

7

that the dog's attack in this case was unprovoked and also, to the extent that appellant knew of the dog's prior bad acts, to show that appellant acted with criminal negligence in failing to secure the dog.

Appellant also argues in this issue that the trial court erred by failing to sua sponte give a limiting instruction to the jury regarding the dog's prior bad acts. We disagree. Appellant did not request a limiting instruction. Consequently, the evidence was admissible for all purposes, and the trial court did not err in failing to sua sponte give a limiting instruction. TEX. R. EVID. 105; *Delgado v. State*, 235 S.W.3d 244, 251 & n.26 (Tex. Crim. App. 2007). Appellant's fourth issue is overruled.

The judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


January 27, 2011

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.