IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






Nos. PD-0287-11, PD-0288-11






CRYSTAL MICHELLE WATSON and JACK WAYNE SMITH, Appellants



v.



THE STATE OF TEXAS





ON APPELLANTS' PETITIONS FOR DISCRETIONARY REVIEW


FROM THE ELEVENTH COURT OF APPEALS


YOUNG COUNTY





 Meyers, J., delivered the opinion for a unanimous Court.


O P I N I O N 



 Appellants Crystal Michelle Watson and Jack Wayne Smith were charged with the
offense of attack by dog resulting in death. Tex. Health & Safety Code §
822.005(a)(1). The jury found them guilty and sentenced each to seven years'
confinement and a $5,000 fine. Appellants appealed, and the court of appeals affirmed
the judgments of the trial court. Watson v. State, 337 S.W.3d 347 (Tex. App.- Eastland
2011); Smith v. State, 337 S.W.3d 354 (Tex. App.-Eastland 2011). We granted
Appellants' petitions for discretionary review and consolidated the cases to consider
whether Texas Health and Safety Code Section 822.005(a)(1) is unconstitutionally vague
and therefore void and whether the convictions violate both the unanimous jury guarantee
of the Texas Constitution and the "substantial majority" requirement of the Sixth
Amendment of the United States Constitution. We will affirm the court of appeals. FACTS

 Appellants live in a rural area and were the owners of several pit bulls. On the day
of the attack, Watson's daughter had been playing with Tanner Monk, a 7-year-old boy
who lived around the corner. Although the properties were separated by a wire fence,
there was a trail between their houses that went through an opening in the fence. The
children had been going back and forth on the trail, and Appellants' pit bulls had been
playing and walking with them. At around 3 p.m., Watson asked her daughter to come
home so they could drive into town. Tanner also returned to Appellants' house to get his
water gun from Watson's daughter. About an hour later, Sharon Rogers, who lived down
the street from Appellants, saw Tanner lying in a drainage ditch about 100 feet from the
gate to Appellants' house. Rogers stopped to check on him, but two white pit bulls 
chased her back to her car. She noticed that there was blood on the dogs, so she called
911. When officers arrived at the scene, they shot two dogs that were acting aggressively,
and saw another dog run through an open gate to Appellants' yard. The officers found
that Tanner was dead and had bite marks covering his body. Officers noticed blood on
the ground around Tanner's body, but no drag marks or blood trails, which indicated to
them that he was killed in the ditch where he was found. During the investigation of the
scene, officers found one of Tanner's shoes in Appellants' yard and seized two more dogs
from Appellants' residence. Other than a small amount of Tanner's blood on the shoe
found in Appellants' yard and Tanner's blood on all four of Appellants' dogs, there was
no blood found on Appellants' property.

 One of the first deputies to arrive on the scene observed that the fence around
Appellants' property was "a broken down field fence with holes in it" and stated that it
would not be capable of holding dogs in, even if the gate had been closed. He also
noticed that there were no dog pens, dog houses, stakes, or chains to keep the dogs in the
yard. 

 Watson and Smith were charged, in separate indictments, with Attack by a Dog
and were tried together. At Appellants' trial, the medical examiner testified that most of
Tanner's injuries occurred right around the time of his death and that the injuries to his
neck would have caused him to bleed to death in two to three minutes. And, based on the
amount of blood at the scene, it is most likely that the major injuries occurred where his
body was found, although some of the injuries to Tanner's arms and legs could have
occurred elsewhere. He stated that the injuries were consistent with an animal attack by a
dog or other carnivore and that the cause of death was mauling by canines. He said that
Tanner died of blood loss, but agreed that most of the injuries to Tanner's legs would
have bled very little and that Tanner would have been able to move after those injuries
were inflicted. 

 A forensic dentist testified that the dog-bite marks on Tanner's body were so
commingled that he could not tell them apart, and thus he could not tell which of the four
dogs had made the marks. He testified that each of the four dogs could have made any of
the marks, but said that he could not say exactly what type of animal inflicted the wounds. 
He also acknowledged that, from the bite-mark pattern, he could not say exactly what
species had made the marks and that he could not eliminate many other kinds of animals
as having made them. 

 The application portion of the jury charge instructed the jurors as follows: 

 Now bearing in mind the foregoing instructions, if you believe from the
evidence beyond a reasonable doubt, that on or about the 18th day of May,
2008, in the County of Stephens, and State of Texas, as alleged in the
indictment, that the defendant[s], [CRYSTAL MICHELLE WATSON and]
JACK WAYNE SMITH, did then and there with criminal negligence, fail
to secure a dog or dogs and one or more of those dogs made an unprovoked
attack on another person, namely TANNER JOSHUA MONK, that
occurred at a location other than the owner's real property, namely on or
about County Road 415, that caused the death of TANNER JOSHUA
MONK, then you will find the defendant guilty of the offense of Attack by
Dog Resulting in Death and say so by your verdict, but if you do not so
believe, or if you have a reasonable doubt thereof, you will acquit the
defendant and say by your verdict "Not Guilty".

 The jury found Watson and Smith guilty. Both Appellants filed an appeal arguing
that the statute under which they were charged is unconstitutionally vague and that their
constitutional rights to a unanimous jury verdict were violated. 

COURT OF APPEALS

 The court of appeals issued two separate opinions, one for each Appellant,
containing identical facts and analysis. The court of appeals determined that the Attack
by Dog statute is constitutional because the undefined terms relate to the actions of a dog
rather than the conduct of a person. The court of appeals said that the "acts prohibited by
Section 822.005(a)(1) are defined in such a way as to give a person of ordinary
intelligence a reasonable opportunity to know what is prohibited" and held that "Section
822.005(a)(1) provides fair notice to citizens as to the type of conduct that is proscribed:
failing to secure your dog when you ought to be aware of the risk that the dog will,
without provocation, attack a person." Watson, 337 S.W.3d at 350; Smith, 337 S.W.3d at
357. The court of appeals addressed the argument that the statute is unconstitutional as
applied in this case and said, "Even if the attack began at appellant's residence, it is clear
from the evidence that Tanner was fatally attacked at a location other than appellant's
residence. We hold that Section 822.005(a)(1) is not unconstitutional on its face or as
applied in this case." Id.

 The court of appeals states that the jury charge allowed the jury to find Appellants
guilty if their dog or dogs "made an unprovoked attack" at a location other than the
owners's property. Because this charge required each juror to find that an attack occurred
somewhere off Appellants' property, the court of appeals concluded that the jury's verdict
must have been unanimous as to that element of the offense. The court of appeals
affirmed the judgment of the trial court.

ARGUMENTS OF THE PARTIES

 Appellants argue that the statute is facially void and void for vagueness. They
claim that it is facially unconstitutional because, by not defining the words "attack" and
"unprovoked," it fails to provide adequate notice of what conduct is prohibited. And,
citing Lawrence v. State, 240 S.W.3d 912 (Tex. Crim. App. 2007), Appellants argue that
the statute is void for vagueness because it fails to define the criminal offense with
sufficient definiteness that ordinary people can understand what conduct is prohibited and
in a manner that does not permit arbitrary and discriminatory enforcement. 

 Appellants argue that the Attack by Dog statute is open-ended and allows the jury
to determine what conduct is prohibited. The statute makes the dog's owner criminally
responsible for the behavior of his animal without defining the behavior and does not give
dog owners notice of what acts perpetrated by a dog are criminal. Appellants say that the
statute offers no guidance on how to enforce the law, and that it is open to interpretation
by law enforcement and the fact finder, who must "step into the shoes of the Legislature
and define the criminal behavior, thereby violating the Separation of Powers Doctrine."

 Appellants contend that the State invited each juror to individually define the term
"attack," which is a definition critical to prove an element of the offense. Appellants
argue that the unanimity requirement dictates that each juror agree that the defendant
committed the same, single, specific criminal act and analogize this situation to cases of
ongoing acts of sexual abuse. Here, the State said that the jury had to find only that an
attack occurred somewhere off Appellants' property, and that it did not matter if the
victim was first bitten on the property. Appellants argue that, as a result, some of the
jurors may have believed that the attack started in the Appellants' yard and some may
have thought the attack occurred only off their property. Therefore, according to
Appellants, if the legislature did not intend for the definition of "attack" to include a
situation where the victim is initially bitten on the property, then Appellants, by law,
would not be guilty. Appellants argue that the Legislature's intended meaning of the term
"attack" was so vague that it undermined the jury's ability to unanimously agree on a
single criminal act upon which to base the convictions. Thus, the verdict does not "meet
either the unanimous jury guarantee of the Texas Constitution, or the "substantial
majority" requirement of the Sixth Amendment to the United States Constitution."

 The State argues that the constitutional issue was not preserved because
Appellants' pretrial objections did not specifically apprise the trial judge of the issue now
raised on appeal. The State says that, even if the issue was preserved, the statute is not
unconstitutionally vague. The undefined words in the statute are not ambiguous and are
understood by persons of ordinary intelligence. The State argues that the conduct
prohibited by the statute is not the "unprovoked attack" by the dog, it is the defendant's
"failure to secure the dog." Thus the fact that the words "attack" and "unprovoked" were
not defined does not affect a person's understanding of what conduct is prohibited and
does not render the statute unconstitutionally vague.

 Regarding Appellants' "unconstitutional as applied" argument that the attack may
have begun on their property, the State points out that the evidence clearly established
that the fatal attack did not occur on Appellants' property. 

 Finally, the State argues that the jury returned a unanimous verdict for the single
offense of attack by dog resulting in death. Because the jury charge specifically required
a finding that the fatal attack occurred off Appellants' property, the jury could not have
based a conviction on a finding that the attack began on the property. The State says that
all the jurors must have agreed that the fatal attack occurred off the property and that the
jury charge did not authorize a conviction based on any alternative theories of criminal
responsibility. CASELAW AND CODE

 In State v. Holcombe, 187 S.W.3d 496 (Tex. Crim. App. 2006), we considered the
constitutionality of a noise ordinance. In our analysis, we stated that:

 It is a basic principle of due process that a statute is void for vagueness if its
prohibitions are not clearly defined. The void-for-vagueness doctrine
requires that a penal statute define the criminal offense with sufficient
definiteness that ordinary people can understand what conduct is prohibited
and in a manner that does not permit arbitrary and discriminatory
enforcement. Although a statute is not impermissibly vague because it fails
to define words or phrases, it is invalid if it fails to give a person of ordinary
intelligence a reasonable opportunity to know what conduct is prohibited. 
Moreover, where, as here, a statute does not substantially implicate
constitutionally protected conduct or speech, it is valid unless it is
impermissibly vague in all applications. 

Id. at 499 (internal citations omitted). Laws cannot be vague or arbitrary; they must
inform a person of ordinary intelligence of what is prohibited by the law so that he may
act accordingly and must provide explicit standards to those who enforce them. 

 In a facial challenge to the vagueness of a law, the appellant must show that the
law is impermissibly vague in all of its applications. "A plaintiff who engages in some
conduct that is clearly proscribed cannot complain of the vagueness of the law as applied
to the conduct of others. A court should therefore examine the complainant's conduct
before analyzing other hypothetical applications of the law." Hoffman Estates v. 
Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982). Terms not defined in a statute
are to be given their plain and ordinary meaning, and words defined in dictionaries and
with meanings so well known as to be understood by a person of ordinary intelligence are
not to be considered vague and indefinite. Floyd v. State, 575 S.W.2d 21, 23 (Tex. Crim.
App. 1978). 

 The Attack by Dog statute in question is Texas Health and Safety Code section
822.005. It says, in relevant part,

 (a) A person commits an offense if the person is the owner of a dog and the
person:

 (1) with criminal negligence, as defined by Section 6.03, Penal Code,
fails to secure the dog and the dog makes an unprovoked attack on another
person that occurs at a location other than the owner's real property or in or
on the owner's motor vehicle or boat and that causes serious bodily injury,
as defined by Section 1.07, Penal Code, or death to the other person; 


ANALYSIS

 Appellants argue that by failing to define the terms "attack" and "unprovoked," the
statute fails to specify what conduct is prohibited, resulting in arbitrary enforcement and a
violation of the Separation of Powers Clause of the United States Constitution. 
Appellants also argue that jurors could have determined different definitions of the
elements of the offense, which violates the unanimous jury guarantees of the Texas and
United States Constitutions. For example, Appellants claim that "attack" could mean the
entire ongoing incident of being bitten by the dogs, in which case the attack could begin
on the dog owner's property, the victim could run off the property, and the attack could
continue off property to the point of fatally injuring the victim. This, according to
Appellants, would result in no criminal liability under the statute. However, if each time
a dog bites the victim is considered to be an "attack," then the location of only the fatal
bite determines liability under the statute. 

 We disagree that this variant definition renders the statute invalid as a whole. 
Failure to secure a dog is the conduct prohibited by the statute, and the key word in the
statute, "Secure," is defined. Section 822.001(4) says, "'Secure' means to take steps that
a reasonable person would take to ensure a dog remains on the owner's property,
including confining the dog in an enclosure that is capable of preventing the escape or
release of the dog." By referring to "steps a reasonable person would take," the statute
clearly establishes an objective reasonable-person standard. There is also a reasonable-person element to the mens rea required for the offense, criminal negligence, which
involves "a gross deviation from the standard of care that an ordinary person would
exercise under all the circumstances as viewed from the actor's standpoint." The statute
contains objective criteria for determining what conduct is prohibited and therefore does
not permit arbitrary enforcement. See Holcombe, 187 S.W.3d at 499-500. 

 In this statute, the elements of the prohibited conduct are clearly defined: a mens
rea of criminal negligence, and the actus reus of failing to secure a dog. An appellant
who engages in conduct that is clearly proscribed cannot complain of the vagueness of the
law as applied to others. See Village of Hoffman Estates, 455 U.S. at 495. Here,
Appellants engaged in the proscribed conduct of failing to secure their dogs.

 Additionally, the application portion of the charge instructed the jury to find
Appellants guilty if they failed to secure their dogs and an attack by the dogs that
occurred off their property resulted in Tanner's death. What matters is that Appellants
failed to secure the dogs and, as a result of the failure to secure the dogs, the dogs were
off Appellants' property when they fatally attacked Tanner. It does not matter if it was a
single fatal attack or the fatal portion of an ongoing attack. The jurors were able to agree
on the single criminal act of Appellants' failure to secure the dogs and convicted
Appellants on the basis of this conduct, not on the conduct of the dogs.

CONCLUSION


 The Attack by Dog statute is not unconstitutionally vague. Appellants' convictions
do not violate the unanimous jury guarantee of the Texas Constitution or the substantial
majority requirement of the Sixth Amendment of the United States Constitution. The
judgment of the court of appeals is affirmed. 


 Meyers, J.


Delivered: June 27, 2012

Publish