IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

**FILED**

**September 27, 2013**
released at 3:00 p.m.
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

No. 12-0614

DREAMA BOWDEN, as Administratrix of the
Estate of Lowell Bowden,
Plaintiff Below, Petitioner

v.

MONROE COUNTY COMMISSION, a political subdivision and
PATRICIA GREEN, individually and in her official capacity,
Defendants Below, Respondents

Appeal from the Circuit Court of Monroe County
The Honorable Robert A. Irons, Judge
Civil Action No. 11-C-18

REVERSED AND REMANDED

Submitted:  September 4, 2013
Filed:  September 27, 2013

Travis A. Griffith, Esq.
OLIVIO & GRIFFITH, PLLC
Charleston, West Virginia
Attorney for Petitioner

Wendy E. Greve, Esq.
PULLIN, FOWLER, FLANAGAN,
 BROWN & POE, PLLC
Charleston, West Virginia
Attorney for Respondents

The Opinion of the Court was delivered PER CURIAM.

1.      "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc*., 194 W. Va. 770, 461 S.E.2d 516 (1995).

2.      "On appeal of a dismissal based on granting a motion pursuant to West Virginia Rules of Civil Procedure 12(b)(6), the allegations of the complaint must be taken as true." Syl. Pt. 1, *Wiggins v. Eastern Associated Coal Corp*., 178 W. Va. 63, 357 S.E.2d 745 (1987).

3.      "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Syl. Pt. 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977).

4.      "W. Va. Code, 29-12A-5(a)(5) [1986], which provides, in relevant part, that a political subdivision is immune from tort liability for "the failure to provide, or the method of providing, police, law enforcement or fire protection[,]" is coextensive with the common-law rule not recognizing a cause of action for the breach of a general duty to provide, or the method of providing, such protection owed to the public as a whole.  Lacking a clear expression to the contrary, that statute incorporates the common-

law special duty rule and does not immunize a breach of a special duty to provide, or the method of providing, such protection to a particular individual." Syl. Pt. 8, *Randall v. Fairmont City Police Dept.*, 186 W.Va. 336, 412 S.E.2d 737 (1991).

5.    "To establish that a special relationship exists between a local governmental entity and an individual, which is the basis for a special duty of care owed to such individual, the following elements must be shown: (1) an assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the local governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the local governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the local governmental entity's affirmative undertaking." Syl. Pt. 2, *Wolfe v. City of Wheeling*, 182 W.Va. 253, 387 S.E.2d 307 (1989).

6.    "The question of whether a special duty arises to protect an individual from a local governmental entity's negligence in the performance of a nondiscretionary . . . function is ordinarily a question of fact for the trier of the facts." Syl. Pt. 3, in part, *Wolfe v. City of Wheeling,* 182 W.Va. 253, 387 S.E.2d 307 (1989).

7.    "The purpose of the words 'and leave [to amend] shall be freely given when justice so requires' in Rule 15(a) W. Va. R. Civ. P., is to secure an adjudication on the merits of the controversy as would be secured under identical factual

situations in the absence of procedural impediments; therefore, motions to amend should always be granted under Rule 15 when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden assertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity to meet the issue." Syl. Pt. 3, *Rosier v. Garron, Inc.*, 156 W.Va. 861, 199 S.E.2d 50 (1973), *overruled on other grounds by Bradshaw v. Soulsby*, 210 W. Va. 682, 558 S.E.2d 681 (2001).

Per Curiam:

Petitioner/plaintiff below, Dreama Bowden, Administratrix of the Estate of Lowell Bowden (hereinafter "petitioner"), appeals the Circuit Court of Monroe County's March 29, 2012, order dismissing the case pursuant to West Virginia Rule of Civil Procedure 12(b)(6) as against respondents/defendants below, Monroe County Commission and Patricia Green, individually and in her official capacity (hereinafter "respondents"). Respondents moved to dismiss the subject complaint on the basis of various statutory immunities set forth in West Virginia Code §§ 29-12A-4 and -5 (1986). In response, petitioner asserted that she had sufficiently alleged facts to survive a W.V.R.C.P. 12(b)(6) motion, which were not subject to the immunities identified by respondents and, in the alternative, that she could allege facts sufficient to establish the "special relationship" exception to the public duty doctrine, subject to the circuit court granting leave to amend her complaint. Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we find that the circuit court erred in dismissing petitioner's case and failing to grant her motion to amend the subject complaint; therefore, we reverse the order of the circuit court and remand the case for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

On November 27, 2009, petitioner's decedent, Lowell Bowden (hereinafter "Mr. Bowden"), was taking his customary walk along Broyles Cemetery

1

Road near Landside, West Virginia, when he was attacked by several American Pit Bull Terriers (hereinafter "pit bulls") owned by Justin Blankenship, Anna Hughes, and Mose Christian, who lived together in a home owned by Justin's mother, Kim Blankenship. Mr. Bowden was maimed beyond recognition and ultimately died as a result of his injuries. Petitioner alleges that "numerous" members of the community had previously complained to respondent Patricia Green, the Monroe County dog warden (hereinafter "Ms. Green"), about the pit bulls running loose and attacking or biting people. Petitioner alleges that three weeks prior to the attack on Mr. Bowden, Ms. Green issued a citation to Justin Blankenship for harboring vicious dogs, but did not seize and impound the subject animals for lack of registration/payment of property taxes, as required by statute.[1] Although not set forth in her original complaint, petitioner sought amendment of her complaint to further allege that she personally contacted Ms. Green to complain about the pit bulls and that Ms. Green personally came to her home and assured her that she would "take care of" the pit bulls.

Petitioner filed the subject action against respondents, as well as Justin Blankenship, Anna Hughes, Mose Christian, Kim Blankenship, and American Modern Insurance Company.[2] Respondent Patricia Green was sued both individually and in her

---

[1] Justin Blankenship pled guilty to nine misdemeanors arising out of this incident, including involuntary manslaughter. Kim Blankenship was acquitted of charges against her.

[2] American Modern Insurance Company was the homeowners' insurer of Kim Blankenship. Default judgment was entered against Mose Christian, Anna Hughes, and

2

official capacity as dog warden.  As to the respondents, petitioner alleged that they 1) failed to impose and collect personal property tax on the pit bulls as required by West Virginia Code § 19-20-2 (1998); 2) failed to impound the dogs due to non-payment of taxes as required by West Virginia Code §§ 19-20-2 and 19-20-6 (1982); 3) failed to impound the dogs for not having proper registration as required by West Virginia Code § 19-20-6; and 4) failed to impound and/or destroy the dogs for being vicious pursuant to West Virginia Code § 19-20-20 (1981). Petitioner also alleged, more generally and broadly, that respondents were negligent in performance of their statutory duties pursuant to West Virginia Code § 19-20-1 *et seq*.  Finally, Ms. Green was named individually in the event that her acts would be found to be outside the scope of her employment or willful, wanton, and reckless, which would strip her of immunity pursuant to West Virginia Code § 29-12A-5(b)(1) and (2).

Respondents moved to dismiss the complaint pursuant to W.V.R.C.P. 12(b)(6), asserting the public duty doctrine, as expressed in West Virginia Code § 29-12A-5(a)(5), and the specific statutory immunities provided in West Virginia Code §§ 29-12A-5(a)(8) - (10) regarding taxation, licensing, and inspection functions.  Petitioner responded, asserting the "special relationship" exception to the public duty doctrine. Significantly, petitioner also moved to amend her complaint to specifically incorporate additional allegations of fact in support of the exception as indicated above, i.e. that the

Justin Blankenship.  Justin Blankenship later appeared, by counsel, and a settlement was reached with the Blankenships and American Modern.

3

dog warden came to her home and told her and Mr. Bowden that she would "take care of" the pit bulls. Before ruling on the motion to amend, however, and without identifying the specific basis of its ruling,[3] the circuit court granted the motion to dismiss, which ruling petitioner now appeals.[4]

## II. STANDARD OF REVIEW

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). Moreover, "[o]n appeal of a dismissal based on granting a motion pursuant to West Virginia Rules of Civil Procedure 12(b)(6), the allegations of the complaint must be taken as true." Syl. Pt. 1, *Wiggins v. Eastern Associated Coal Corp.*, 178 W. Va. 63, 357 S.E.2d 745 (1987). Finally, "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." Syl. Pt. 3, *Chapman v. Kane Transfer Company, Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977) (citation omitted)

---

[3] In its order, the circuit court reiterated the various immunities advanced by respondent in its order, but did not make findings or specify upon which particular basis it was dismissing the complaint.

[4] At or around the time the court entered the order dismissing the case, Kim Blankenship, Justin Blankenship, and American Modern settled with petitioner, leaving the case active only as against the defaulted defendants Mose Christian and Anna Hughes. Since this aspect of the case was technically still pending, petitioner's counsel requested the circuit court to indicate that the order granting respondents' motion to dismiss was a final, appealable order pursuant to W.V.R.C.P. 54. Respondents do not assert before this Court that the order was not final and appealable.

4

(emphasis added)*; see also Dimon v. Mansy*, 198 W.Va. 40, 47-8 n.5, 479 S.E.2d 339, 346-47 n.5 (1996) ("[T]he singular purpose of a Rule 12(b)(6) motion is to seek a determination whether the plaintiff is entitled to offer evidence to support the claims made in the complaint."). With these standards in mind, we will address the parties' arguments.

### III. DISCUSSION

Petitioner asserts four separate assignments of error, which are largely redundant, and will therefore be combined into two.[5] In sum, petitioner asserts that the circuit court erred in finding that the respondents were statutorily immune from liability for the allegations set forth in her complaint and that the circuit court erred in failing to rule on the pending motion to amend the subject complaint before dismissing the action. We agree on both counts and further find that the latter error occasioned the first.

The immunity of political subdivisions and their employees, such as the Monroe County Commission and Ms. Green, is governed exclusively by the West Virginia Tort Claims and Insurance Reform Act set forth in West Virginia Code § 29-12A-1 *et seq.* (commonly referred to as the "Tort Claims Act"). West Virginia Code §

---

[5]*See Evans v. Holt*, 193 W. Va. 578 n.2, 457 S.E.2d 515 n.2 (1995) (consolidating redundant assignments of error); *Robertson v. B. A. Mullican Lumber & Mfg. Co, L. P.*, 208 W. Va. 1 n.1, 537 S.E.2d 317 n.1 (2000) (combining five errors into two); *Tudor's Biscuit World of America v. Critchley*, 229 W.Va. 396, 402, 729 S.E.2d 231, 237 (2012) (combining six errors into two categories).

29-12A-4(b) establishes the baseline principle that a political subdivision is not liable for "governmental or proprietary function[s]" except as set forth in subsection (c). Subsection (c) sets forth five general categories of negligence-based acts or functions for which a political subdivision is not entitled to immunity and may be held liable including specifically, "negligent performance of acts by [] employees while acting within the scope of employment." W. Va. Code § 29-12A-4(c)(2). Irrespective of whether a case falls into one of the five categories set forth in subsection (c), stripping the political subdivision of its general immunity, the Tort Claims Act goes on to enumerate seventeen categories of specific functions for which a political subdivision is nonetheless still immune. W. Va. Code § 29-12A-5(a)(1) – (17). Respondents assert that for purposes of the allegations contained in the subject complaint, four specific immunities are implicated, as follows:

> A political subdivision is immune from liability if a loss or claim results from:
>
> * * *
>
> (5) Civil disobedience, riot, insurrection or rebellion or the failure to provide, or the method of providing, police, law enforcement or fire protection;
>
> * * *
>
> (8) Assessment or collection of taxes lawfully imposed or special assessments, license or registration fees or other fees or charges imposed by law;
>
> (9) Licensing powers or functions including, but not limited to, the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority;

6

(10) Inspection powers or functions, including failure to make an inspection, or making an inadequate inspection, of any property, real or personal, to determine whether the property complies with or violates any law or contains a hazard to health or safety;

W. Va. Code § 29-12A-5(a)(5),  (8) - (10).

Petitioner claims that her case involves the negligence of a government official, liability for which is expressly countenanced in West Virginia Code § 29-12A-4(c)(2), *supra*.  However, petitioner also appears to implicitly concede that, on its face, her original complaint falls into one of the seventeen enumerated immunities set forth in West Virginia Code § 29-12A-5(a).  In particular, she argues that she has alleged a failure to provide law enforcement as described in West Virginia Code § 29-12A-5(a)(5), which both parties agree provides immunity for a breach of a duty owed to the *general* public.  Critically, however, petitioner maintains that her proposed amendment to the complaint would have alleged facts sufficient to establish the "special relationship" exception to the public duty doctrine.

Respondents, on the other hand, contend that the main thrust of the case, as pled in the original complaint, involves taxation, licensing, and inspection functions for which they have immunity pursuant to West Virginia Code § 29-12A-5(a)(8) through (10).  With respect to the immunity for "failure to provide law enforcement" contained in West Virginia Code § 29-12A-5(a)(5), respondents argue simply that the bare allegations contained in the *original* complaint do not sufficiently allege the "special relationship"

7

exception, that any *post-hoc* attempt to rehabilitate the complaint is "opportune" at best, and that an amendment would have proven futile.

We first address petitioner's claim for respondents' failure to provide law enforcement. This Court has held that West Virginia Code § 29-12A-5(a)(5) is the codification of the common law "public duty doctrine" as pertains to political subdivisions and is therefore subject to the "special relationship" exception:

> *W. Va. Code*, 29-12A-5(a)(5) [1986], which provides, in relevant part, that a political subdivision is immune from tort liability for "the failure to provide, or the method of providing, police, law enforcement or fire protection[,]" is coextensive with the common-law rule not recognizing a cause of action for the breach of a general duty to provide, or the method of providing, such protection owed to the public as a whole. Lacking a clear expression to the contrary, that statute incorporates the common-law special duty rule and does not immunize a breach of a special duty to provide, or the method of providing, such protection to a particular individual.

Syl. Pt. 8, *Randall v. Fairmont City Police Dept.*, 186 W.Va. 336, 412 S.E.2d 737 (1991).

With respect to the "special relationship" or "special duty" exception, this Court has held that

> [t]o establish that a special relationship exists between a local governmental entity and an individual, which is the basis for a special duty of care owed to such individual, the following elements must be shown: (1) an assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the local governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the local governmental entity's agents

8

and the injured party; and (4) that party's justifiable reliance on the local governmental entity's affirmative undertaking.

Syl. Pt. 2, *Wolfe v. City of Wheeling*, 182 W.Va. 253, 387 S.E.2d 307 (1989). Moreover, "[t]he question of whether a special duty arises to protect an individual from a local governmental entity's negligence in the performance of a nondiscretionary . . . function is ordinarily a question of fact for the trier of the facts." Syl. Pt. 3, in part, *Wolfe*.

As previously noted, subsequent to the filing of respondents' motion to dismiss, petitioner moved to amend her complaint to allege that Ms. Green came to her house and specifically assured her and her decedent that she was going to "take care of" the subject pit bulls.[6] However, when petitioner's counsel appeared at the hearing on petitioner's motion to amend the complaint to include these additional facts, he was provided with a copy of the circuit court's order granting respondents' motion to dismiss, which had been entered four days earlier. Petitioner therefore maintains that the circuit court erred in failing to first rule on the motion to amend prior to dismissing the complaint, which would allow her to survive a W.V.R.C.P. 12(b)(6) motion based on immunity. Petitioner maintains that W.V.R.C.P. 15 required the circuit court to permit the amendment. To that end, this Court has held:

_____

[6]In addition to these newly-alleged facts, petitioner's proposed amended complaint made minor wording/stylistic changes for clarity. Respondents obtusely maintain that the amended complaint proposed only to "add negligence claims that would have been futile," inexplicably failing to dignify the significant factual additions in support of the "special relationship" exception clearly set forth in the proposed "First Amended Complaint."

9

The purpose of the words "and leave [to amend] shall be freely given when justice so requires" in Rule 15(a) W. Va. R. Civ. P., is to secure an adjudication on the merits of the controversy as would be secured under identical factual situations in the absence of procedural impediments; therefore, motions to amend should always be granted under Rule 15 when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden assertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity to meet the issue.

Syl. Pt. 3, *Rosier v. Garron, Inc.*, 156 W.Va. 861, 199 S.E.2d 50 (1973), *overruled on other grounds by Bradshaw v. Soulsby*, 210 W. Va. 682, 558 S.E.2d 681 (2001). Petitioner argues that no scheduling order had been entered and only minimal written discovery had occurred; therefore, respondents would in no way be prejudiced by the amendment. Respondents, characterizing the proposed amendment as "suspicious," but without demonstrable evidence, summarily contend they would be "overly prejudice[d]" by the amendment.

As this Court has previously noted, motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and [should be] rarely granted." *John W. Lodge Distributing Co., Inc. v. Texaco, Inc.*, 161 W.Va. 603, 606, 245 S.E.2d 157, 159 (1978). More specifically, "[t]he trial court should not dismiss a complaint merely because it doubts that the plaintiff will prevail in the action, and whether the plaintiff can prevail is a matter properly determined on the basis of proof and not merely on the pleadings." *Id.* (citing Wright & Miller, *Federal Practice and Procedure: Civil* § 1216 (1969). In light of W.V.R.C.P. 15(a)'s liberal construction and the fact that the allegations contained in

10

petitioner's proposed amendment are clearly sufficient to survive dismissal under W.V.R.C.P. 12(b)(6) by alleging an exception to the immunity provided in West Virginia Code § 29-12A-5(a)(5), we agree that the circuit court erred in granting respondents' motion to dismiss and in failing to grant petitioner's pending motion to amend. We can perceive no prejudice to respondents in permitting the amendment; certainly petitioner alleged facts sufficient to entitle her to conduct additional discovery and develop the evidence.[7]

Petitioner unquestionably sought to allege facts pursuant to her amendment which may potentially draw her action outside of the ambit of statutory immunity—for both the Monroe County Commission and Ms. Green. While employees of political subdivisions are generally immune for their negligence as provided by West Virginia Code § 29-12A-5(b), the complaint alleges, alternatively, that Ms. Green acted in a manner that was "willful, wanton and/or [with] reckless disregard." Such allegations are sufficient to allege an absence of immunity as to Ms. Green personally under West Virginia Code § 29-12A-5(b)(2), which strips an employee of immunity if the employee's acts or omissions "were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]"

---

[7] Of course, respondents are likewise entitled to move for summary judgment on the basis of statutory immunity at the close of discovery, at which point the circuit court may make a more informed determination as to the applicability of immunity upon a fully developed record.

11

Respondents argue, alternatively, that the immunities for taxation, licensing, and inspection functions contained in West Virginia Code § 29-12A-5(a)(8) through (10) essentially "subsumed" any actionable aspect of petitioner's case. We disagree. Without question, the complaint references specifically the statutory licensing, registration, and taxation functions of counties and their dog wardens, as well as the respondents' failures to fulfill their duties in that regard.[8] However, on their face, fairly

---

[8] West Virginia Code § 19-20-1 *et seq.* governs registration/taxation/control and management of dogs and cats. West Virginia Code § 19-20-2 requires the assessor to assess and collect a dog tax; if the tax is not paid, the assessor must certify the tax to the dog warden. If the tax is certified to the dog warden, he or she "*shall* take charge of the dog for which the tax is delinquent and impound the same" for 15 days. *Id.* (emphasis added). At the end of 15 days, the dog may be sold or killed. *Id.* Contemporaneously with assessing the head tax, the assessor must require registration of the dog.

West Virginia Code § 19-20-6 sets forth the particular duties of the dog warden. The dog warden's duties are to "enforce the provisions of this code with respect to the control and registration of dogs, the impounding, care and destruction of unlicensed dogs." W. Va. Code § 19-20-6(a). This section further states that the dog warden "shall patrol the county in which they are appointed and *shall seize on sight and impound any dog more than six months of age found not wearing a valid registration tag . . . .* They shall be responsible for the proper care and final disposition of all impounded dogs." *Id.* (emphasis added). If a dog is seized, the dog warden must give notice to the owner that the dog will be "sold or destroyed if not redeemed within five days." *Id.*

Respondents curiously contend that they do not have *any* statutory authority to seize and impound dogs. That is clearly incorrect, as West Virginia Code §§ 19-20-2 and -6 both provide authority to seize, impound, and sell or destroy tax delinquent dogs and unregistered dogs, respectively.

Critically, however, we note that this Code section gives significant leeway to the counties to establish rules and regulations to control and manage the dogs in the county:

> Any county commission may promulgate and enforce such ordinances, rules and regulations, *not inconsistent with the provisions of this article*, as it considers necessary or convenient for the control and management of all dogs in the

12

read, these allegations would appear to simply describe circumstances giving rise to the the "law enforcement" functions which petitioner claims the respondents negligently failed to provide.

More importantly, none of the allegations pertaining to these functions, based upon the necessarily limited record before us, appear to conform to the type of immunity granted in these statutes. First, petitioner does not allege that her decedent's death arises out of the "[a]ssessment or collection of taxes . . . special assessments, license or registration fees or other fees or charges imposed by law[.]" Rather, she alleges that defendants *failed to impose the statutory penalty* of impoundment as a result

> county . . . [p]rovided, that the county commissions may promulgate and enforce such ordinances, rules and regulations to the extent necessary for the implementation of the provisions contained in this article.

W. Va. Code § 19-20-6(b) (emphasis added). More importantly for purposes of this case, West Virginia Code § 19-20-19a provides that the county commission "may, at its discretion, empower county dog wardens and deputy dog wardens to issue citations for violation of provisions of this article." Petitioner alleges that Ms. Green cited Justin Blankenship for harboring vicious dogs three weeks prior to the attack and is critical of Ms. Green for not impounding the dog for being unregistered pursuant to West Virginia Code § 19-20-6(a), *supra*. However, the prohibition on keeping vicious dogs as set forth in West Virginia Code § 19-20-20 makes no requirement of the dog warden to seize and impound such a dog; rather, it provides that "[u]pon satisfactory proof before a circuit court or magistrate that such dog is vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals, the judge may authorize the humane officer to cause such dog to be killed."

These statutes merely underscore the lack of critical discovery in this matter. Significant issues regarding whether Ms. Green negligently performed her duties can only be determined after further discovery on the county's rules and regulations for control and management of dogs.

13

of the dog owners' failure to pay taxes on and register their dogs, i.e. respondents failed to *enforce* these laws. Next, with respect to licensing immunity, this Court has held that this immunity concerns injuries that are "caused by the conduct of a private party who obtains a permit or license for that conduct from the political subdivision." *McCormick v. Walmart Stores, Inc*., 215 W. Va. 679, 684, 600 S.E.2d 576, 581 (2004). Petitioner's claim centers around the dog owners' failure to obtain a proper dog license and the respondents' negligent failure to *enforce penalties* for such failure by impounding the dogs. Finally, petitioner does not allege that respondents "fail[ed] to make an inspection, or ma[de] an inadequate inspection, of any property, real or personal, to determine whether the property complies with or violates any law or contains a hazard to health or safety." Rather, she alleges the opposite—that respondents inspected the pit bulls and found that they were not properly registered and then *failed to impound* the dogs as required by statute. As such, *based on the bare allegations in the complaint*, we do not find these particular immunities sufficient to warrant dismissal of petitioner's complaint pursuant to W.V.R.C.P. 12(b)(6).

This Court has historically read these enumerated immunities in a very limited fashion. *See Randall,* 186 W. Va. at 347, 412 S.E.2d at 748 (applying "general rule of construction in governmental tort legislation cases favoring liability, not immunity: unless the legislature has *clearly provided for immunity . . .* the general common-law goal of compensating injured parties for damages caused by negligent acts must prevail[]" (emphasis added)); *see also Hose v. Berkeley Co. Planning Comm'n,* 194

14

W. Va. 515, 522, 460 S.E.2d 761, 768 (1995) (same). There is nothing in the bare complaint or amended complaint with which we are presented which would lead this Court to construe them as broadly as respondents urge. At a minimum, further discovery is necessary to determine precisely what the county policies were with regard to taxation, licensing, and registration and whether Ms. Green failed in any of her ministerial duties in that regard.

Accordingly, we find that the circuit court erred in granting respondents' motion to dismiss on the basis of the statutory immunities contained in West Virginia Code § 29-12A-1 *et seq.* and further erred in failing to grant petitioner's motion to amend her complaint.

## IV. CONCLUSION

For the foregoing reasons, the March 29, 2012, order of the Circuit Court of Monroe County is reversed and we remand for further proceedings.

Reversed and remanded.