No. 13-0936 - Estella Robinson v. City of Bluefield

**FILED**

**October 2, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, Justice, dissenting:

In complete disregard of the unfortunate truth that not all dogs are like the beloved Lassie,  a vicious dog has been granted a pardon by the highest court of this State. Indeed, the majority of this Court has seemingly turned a blind eye to the fact that the dog in question[1] broke free of its chain and engaged in a brutal and unprovoked attack upon an experienced humane officer,[2] whose resultant injuries required surgery and a hospitalization that approximated five days.[3]  The majority also seems to disregard the fact that the dog's owner pled guilty to owning and keeping an animal known by her to be vicious, dangerous, and in the habit of biting persons in violation of Bluefield City Ordinance § 4-49.   While I, too, love animals, and have fond memories of my childhood companion and faithful dog,

---

[1]The dog is a pit bull terrier.

[2]The humane officer was responding to the petitioner's residence in reference to a complaint that one dog was running loose, and another had inadequate shelter.

[3]The necessity of surgical treatment and hospitalization was described by counsel during oral argument. I find the length of this hospitalization to be noteworthy particularly in light of the growing trend of "same-day" surgery centers, where patients are discharged the same day of their surgery, even when internal organs have been surgically excised. Consequently, it is clear to me that the dog in question inflicted very serious injuries upon the humane officer so as to require a hospitalization of that duration.  That being said, the majority's statement that "[o]fficer Thompson sought medical treatment following this incident[]" callously diminishes the severity of this situation.

1

"Bozo," my affinity does not blind me to the sad reality that some dogs are dangerous and

vicious, and inflict serious injuries, and even death, on innocent victims.[4]

In order to address the threat posed by vicious dogs and protect the public

health, safety, and general welfare of their citizens, numerous municipalities in West Virginia

have enacted vicious dog ordinances, which are enforced in the municipal courts of those

---

[4]*See Durham v. Jenkins*, 229 W.Va. 669, 735 S.E.2d 266 (2012) (disallowing civil suit brought under criminal statute by parents seeking destruction of dog who attacked their young daughter causing extensive injuries to child's head, waist, thighs, and back and requiring hospitalization and surgical repair); *State v. Molisee*, 180 W.Va. 551, 378 S.E.2d 100 (1989) (reversing order to euthanize dog that injured child where dog's owner did not receive notice of trial date); *Atkins v. Conley*, 202 W.Va. 457, 504 S.E.2d 920 (1998) (reversing on evidentiary error jury verdict finding dog's owners liable to parents of two-year-old child, who incurred multiple injuries and permanent facial scarring inflicted by dog); *Bowden v. Monroe Cnty. Com'n,* 232 W.Va. 47, 750 S.E.2d 263 (2013) (setting aside dismissal of complaint brought by estate of victim who was maimed beyond recognition and ultimately died due to injuries sustained when he was attacked by several pit bulls while taking walk); *State v. Moore*, Nos. 11AP–1116, 11AP–1117, 2013 WL 3968166 (Ohio App. 10 Dist. 2013)(Aug. 1, 2013) (affirming conviction on two counts of failure to confine vicious dog where appellant's pit bull mauled two different victims in separate incidents); *State v. Collins*, --- S.E.2d ----, 2014 WL 4087597 (S.C. 2014) (Aug. 20, 2014) (holding trial court's admission of pre-autopsy photographs of victim, 10-year-old boy who died after being severely mauled by dogs, was not abuse of discretion); *King v. Foht*, 2013 WL 5310436 (Tenn.Ct.App. 2013) (reversing summary judgment granted in favor of owners of residential rental property in personal injury action brought on behalf of eight-year-old child attacked and injured by pit bull dog while she was walking along sidewalk); *Sawh v. City of Lino Lakes*, 823 N.W.2d 627 (Minn. 2012) (finding substantial evidence supported city's finding that dog was unprovoked when it bit victim in third incident, so as to support city's order for destruction of dog under city ordinance); *Tracey v. Solesky*, 427 Md. 627, 50 A.3d 1075 (2012) (finding that harboring pit bull terrier was inherently dangerous activity for which landlord could be held strictly liable when tenant's pit bull crossed street, attacked, and seriously injured 10-year-old boy who was playing); *Watson v. State*, 337 S.W.3d 347 (Tex.App. 2011) (affirming conviction for offense of attack by dog resulting in death where seven-year-old boy was mauled to death by dogs).

municipalities.[5] *See, e.g.,* Section 10-117 of the Code of Ordinances for the City of Charleston (providing for the euthanization of dangerous dogs under certain conditions); Section 507.11 of the City of Morgantown's Ordinances (providing for the destruction of vicious dogs under certain circumstances); Section 505.15 of the Codified Ordinances of the City of Martinsburg (providing for the lethal destruction of vicious dogs when certain conditions are met); Section 505.17 of the Code of Ordinances of the City of Parkersburg (providing that vicious dogs declared to be public nuisances may be summarily destroyed if found running at large and otherwise under certain circumstances); Section 508.11 of the Code of Ordinances for the City Wheeling (providing for destruction of vicious dogs after certain conditions are met); Section 507.99 of the City of Dunbar Code of Ordinances (providing that any vicious dog that attacks human being or another domestic animal may be ordered destroyed when in municipal court's judgment, such vicious dog represents continuing threat of serious harm to human beings or domestic animals); Section 507.18(i) of the Codified Ordinances of the City of Clarksburg (providing that City Manager or his/her

---

[5]Many municipal judges in this State, including the long-time municipal judge in the City of Bluefield, are lawyers. And, where they are not, they must attend a course in the principles of law and procedure. *See* W.Va. Code § 8-10-2(c) (providing that "[a]ny person who assumes the duties of municipal court judge who has not been admitted to practice law in this state shall attend and complete the next available course of instruction in rudimentary principles of law and procedure. . . . The instruction must be performed by or with the services of an attorney licensed to practice law in this State for at least three years."). Thereafter, municipal judges who are not lawyers must also attend a continuing education course annually. *Id.* In addition, municipal courts may hold jury trials, where warranted. *See* W.Va. Code § 8-10-2(d) (providing, in part, that "a defendant who has been charged with an offense for which a period of confinement in jail may be imposed is entitled to a trial by jury.").

designee may order destruction of dog it determines to be extremely dangerous to public

health or safety, dog that has made extremely vicious attack upon individual, or dog declared

dangerous whose owner is unable or unwilling to adequately restrain it). Importantly, many

municipalities have had vicious dog ordinances for decades. As we explained nearly eighty

years ago,

> under modern law . . . the obvious necessity of protecting the public from . . . vicious, and otherwise dangerous dogs [means that dogs] must be held subject to . . . very rigid regulation. Because of this, ordinances and statutes authorizing the summary destruction of dogs not kept in accordance with their terms have generally been upheld.

*City of Buckhannon ex rel. Cockerill v. Reppert*, 118 W.Va. 10, 10, 189 S.E. 585, 585 (1937)

(Kenna, J., concurring).

Citizens are not without recourse should they disagree with a ruling of a

municipal court, as seen here, where the petitioner appealed the municipal court's order

following her counseled guilty plea. The petitioner challenged the municipal court's

authority to order the destruction of her vicious dog and argued that West Virginia Code §

19-20-20,[6] which allows counties to seek the destruction of vicious dogs in magistrate and

---

[6]West Virginia Code § 19-20-20 (2007) provides that

> [e]xcept as provided in section twenty-one of this article, no person shall own, keep or harbor any dog known by him to be vicious, dangerous, or in the habit of biting or attacking other persons, whether or not such dog wears a tag or muzzle. Upon

(continued...)

4

circuit courts, conflicts with the Bluefield City Ordinance § 4-49, which gives its municipal

court similar authority.


In addressing the petitioner's arguments, the circuit court thoroughly explained

that Chapter 8 of the West Virginia Code governs municipal corporations, whereas Chapter

19 does not.[7] The circuit court further explained that for a conflict to exist, as the petitioner

argued, the Bluefield ordinance must either (1) permit or authorize that which the

Constitution or general law forbids or prohibits, or (2) forbids or prohibits that which the

Constitution or general law permits or authorizes.[8] The circuit court soundly reasoned that

---

[6](...continued)
> satisfactory proof before a circuit court or magistrate that such
> dog is vicious, dangerous, or in the habit of biting or attacking
> other persons or other dogs or animals, the judge may authorize
> the humane officer to cause such dog to be killed.

[7]In this regard, I note that Chapter 19 is entitled "Agriculture," whereas Chapter 8 is entitled " Municipal Corporations."

[8]In its analysis, the circuit court relied upon West Virginia Code §8-12-5 (2012 & Supp. 2014), which grants municipalities the power and authority to enact ordinances, which do not conflict with other laws, as follows:

> In addition to the powers and authority granted by: (i)
> The Constitution of this State; (ii) other provisions of this
> chapter; (iii) other general law; and (iv) any charter, *and to the*
> *extent not inconsistent or in conflict with any of the foregoing*
> except special legislative charters, every municipality and the
> governing body thereof shall have plenary power and authority
> therein by ordinance or resolution, as the case may require, and
> by appropriate action based thereon.

(continued...)

neither of these circumstances exists because article VIII, section 11 of the West Virginia

Constitution expressly directs that municipal courts created by the Legislature[9] "shall have

jurisdiction to enforce municipal ordinances" and that West Virginia Code § 8-12-5(26)

unequivocally authorizes municipalities "[t]o regulate or prohibit the keeping of animals or

fowls and to provide for the impounding, sale or destruction of animals or fowls kept

contrary to law or found running at large." The circuit court further reasoned that because

Bluefield City Ordinance § 4-49, West Virginia Code § 8-12-5(26), and West Virginia Code

---

[8](...continued)
*Id.* (emphasis added). The circuit court also relied upon West Virginia Code § 8-1-2(9)
(2012), which provides that,

> "[i]nconsistent or in conflict with" shall mean that a charter or
> ordinance provision is repugnant to the Constitution of this State
> or to general law because such provision (i) permits or
> authorizes that which the Constitution or general law forbids or
> prohibits, or (ii) forbids or prohibits that which the Constitution
> or general law permits or authorizes[.]

[9]The Legislature authorized municipalities to create municipal courts through its
enactment of West Virginia Code § 8-10-2(a) (2012), which states in pertinent part, as
follows:

> Notwithstanding any charter provision to the contrary,
> any city may provide by charter provision and any municipality
> may provide by ordinance for the creation and maintenance of
> a municipal court, for the appointment or election of an officer
> to be known as municipal court judge . . . and authorize the
> exercise by the court or judge of the jurisdiction and the judicial
> powers, authority and duties set forth in section one of this
> article and similar or related judicial powers, authority and
> duties enumerated in any applicable charter provisions, as set
> forth in the charter or ordinance.

6

§ 19-20-20[10] all provide for the regulation and destruction of vicious animals, there is "no conflict in substance or purpose."

The discussion above indisputably demonstrates the authority of a municipality to establish a municipal court charged with enforcing the municipality's ordinances, which may provide for the impoundment and/or destruction of vicious and dangerous animals. Accordingly, I now turn to the majority's ill-advised and legally unsound conclusion that West Virginia Code § 19-20-20[11] somehow nullifies the long-standing constitutional and statutory authority of municipalities to address the humane destruction of vicious dogs through their ordinances enforced by their own courts within their own communities. The Legislature, having already addressed the issue of the destruction of animals in the context of municipalities, had no reason to include municipal courts in West Virginia Code § 19-20-20. Significantly, "[c]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Martin v. Randolph Cnty. Bd. of Educ.*, 195 W.Va. 297, 312, 465 S.E.2d 399, 415 (1995) (citation omitted). Here, the majority finds that the grant of authority to municipalities to enact ordinances that provide for the destruction of "animals and fowl," as found in West Virginia Code § 8-12-5(26), is trumped by West

_____

[10]In addition to this statute that allows for counties to address vicious dogs, I observe that West Virginia Code § 19-20-8(a) provides for the humane destruction of *any* unlicensed dog that has been impounded if not claimed by its owner within five days, regardless of whether it is vicious.

[11]*See supra* note 6.

Virginia § 19-20-20 because the latter addresses "dogs" specifically rather than "animals" generally.[12] Such reasoning is flawed. The Legislature undoubtedly employed the term "animals" to fulfill its intent of giving municipalities very broad authority to enact ordinances addressed to any manner of animals that might be found within a municipality, whether they be pot bellied pigs, cats, ferrets, or dogs. *See* Black's Law Dictionary 106 (10th ed. 2014) (defining "animal" as "[a]ny living creature (besides plants) other than a human being."). Obviously, dogs fall well within the definition of "animal."

As such, it is clear that the Legislature intended to provide municipalities, as well as counties, with the ability to control dangerous and vicious animals, including dogs, within their purview. Rules of statutory construction do not require municipalities to yield to counties in this regard as each has a role in protecting the safety and well-being of the citizenry from dangerous and vicious animals.

Moreover, "[t]he Legislature, when it enacts legislation, is presumed to know of its prior enactments." Syl. Pt. 12, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953). Although West Virginia Code § 8-12-5 was first enacted in 1868, the Legislature did not overlook or forget this statute when it enacted West Virginia Code § 19-20-20 in 1981. In fact, West Virginia Code § 8-12-5 was last amended this year—2014. And, the Legislature clearly recalled the statutory authority that it gave to municipalities in the area of animal

[12]

8

control when it expressly provided in West Virginia Code § 19-20-6a (2007) that county commissions may contract with or reimburse a municipality for the "care, maintenance, control, or destruction of dogs and cats[,]" and when it gave counties and municipalities the permission to contract with one another in relation to the maintenance of a county dog pound and to jointly employ a dog warden in West Virginia Code §19-20-8a (2007). Simply stated, had the Legislature intended to provide magistrates and circuit courts with *exclusive* jurisdiction to order the destruction of dangerous and vicious dogs, it could have done so by expressly stating that "sole and exclusive jurisdiction for the destruction of vicious dogs is vested in circuit courts and magistrates, notwithstanding any other statute to the contrary." However, the Legislature did not provide for such exclusivity, and "[c]ourts are not free to read into the language what is not there, but rather should apply the statute as written." *State ex rel. Frazier v. Meadows*, 193 W.Va. 20, 24, 454 S.E.2d 65, 69 (1994).

I am deeply concerned the majority's opinion will serve as a spring board for further diminishment of the authority and duty of municipal courts to enforce municipal ordinances. While the majority acknowledges the statutory authority of municipalities to enact ordinances, it cavalierly disallows the enforcement of such ordinances in municipal courts simply because a statute allows for counties to seek the destruction of vicious dogs in either magistrate or circuit court. Will the confusion created by the majority effectively sanction future and potentially fatal attacks by vicious dogs upon unsuspecting children as they walk to school within a city's limits ? Will an elderly couple be mauled by a vicious

9

dog in their front yard as they rake leaves?  Likewise, will the majority's ruling be relied upon in the future to strip municipal courts of their power to enforce other ordinances, such as those involving assault and battery and hate crimes, merely because there are statutes that also authorize the prosecution of such matters in either magistrate or circuit court?

For these reasons, I find that the circuit court appropriately upheld the authority of the City of Bluefield's municipal court to enforce Bluefield City Ordinance § 4-49 in this matter.  And, based upon my concerns expressed herein, I respectfully dissent from the majority's decision in this case.