IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2024 Term

_____

No. 22-765

_____

FILED

**November 14, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MONONGALIA COUNTY COMMISSION A/K/A
MONONGALIA COUNTY SHERIFF'S DEPARTMENT
AND JOHN DOE DEPUTY,
Defendants Below, Petitioners,

v.

AMANDA F. STEWART, INDIVIDUALLY AND/OR
AS ADMINISTRATOR OF THE ESTATE OF JOHN D. STEWART, JR.,
Plaintiff Below, Respondent.
_____

Appeal from the Circuit Court of Monongalia County
The Honorable Philip D. Gaujot, Judge
Civil Action No. 21-C-101

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
_____

Submitted: September 17, 2024
Filed: November 14, 2024

Tiffany R. Durst, Esq.
Nathaniel D. Griffith, Esq.
Pullin, Fowler, Flanagan,
Brown & Poe, PLLC
Morgantown, West Virginia
Attorneys for Petitioners

John R. Angotti, Esq.
David J. Straface, Esq.
Chad C. Groome, Esq.
Angotti & Straface, L.C.
Morgantown, West Virginia
Attorneys for the Respondent

JUSTICE BUNN delivered the Opinion of the Court.

CHIEF JUSTICE ARMSTEAD concurs in part, dissents in part, and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1.     "*W. Va. Code*, 29-12A-5(a)(5) [1986], which provides, in relevant part, that a political subdivision is immune from tort liability for 'the failure to provide, or the method of providing, police, law enforcement or fire protection[,]' is coextensive with the common-law rule not recognizing a cause of action for the breach of a general duty to provide, or the method of providing, such protection owed to the public as a whole. Lacking a clear expression to the contrary, that statute incorporates the common-law special duty rule and does not immunize a breach of a special duty to provide, or the method of providing, such protection to a particular individual." Syllabus point 8, *Randall v. Fairmont City Police Department*, 186 W. Va. 336, 412 S.E.2d 737 (1991).

2.     "The phrase 'the method of providing police, law enforcement or fire protection' contained in *W. Va. Code*, 29-12A-5(a)(5) [1986] refers to the decision-making or the planning process in developing a governmental policy, including how that policy is to be performed. To the extent that the holding of the Court is inconsistent with language in *Beckley v. Crabtree*, 189 W. Va. 94, 428 S.E.2d 317 (1993) and its progeny, the holdings in those cases are hereby modified." Syllabus point 4, *Smith v. Burdette*, 211 W. Va. 477, 566 S.E.2d 614 (2002).

i

3. "*W. Va. Code*, 29-12A-5(a)(5) [1986] does not provide immunity to a political subdivision for the negligent acts of the political subdivision's employee performing acts in furtherance of a method of providing police, law enforcement or fire protection." Syllabus point 5, *Smith v. Burdette*, 211 W. Va. 477, 566 S.E.2d 614 (2002).

4. The interpretations of West Virginia Code § 29-12A-5(a)(5) set out in Syllabus points 4, 5, & 6 of *Albert v. City of Wheeling*, 238 W. Va. 129, 792 S.E.2d 628 (2016), are hereby limited and apply only to a political subdivision's immunity against claims seeking to hold it vicariously liable for negligent conduct by its employees who are not employed in a police, law enforcement, or fire protection capacity, but who are performing acts in the course of their employment that are directly connected to police, law enforcement, or fire protection.

5. Because *Smith v. Burdette*, 211 W. Va. 477, 566 S.E.2d 614 (2002), did not involve negligent conduct by political subdivision employees who are not employed in a police, law enforcement, or fire protection capacity performing acts directly connected to police, law enforcement, or fire protection in the course of their employment, Syllabus point 5 of *Smith* was erroneously overruled in Syllabus point 4 of *Albert v. City of Wheeling*, 238 W. Va. 129, 792 S.E.2d 628 (2016).

ii

6. "A party that meets the statutory definition of a political subdivision or employee found in The Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-3, is not entitled to qualified immunity solely on the basis that the claims alleged against them fall within the exceptions to statutory immunity set forth in West Virginia Code § 29-12A-18." Syllabus point 3, *Mercer County Board of Education v. Shrewsbury*, No. 22-745, ___ W. Va. ___, ___ S.E.2d ___ (Nov. 12, 2024).

7. The prohibition of punitive or exemplary damages in West Virginia Code § 29-12A-7(a) operates as an immunity. As such, a circuit court's denial of a motion to dismiss a claim for punitive or exemplary damages predicated on this immunity is immediately appealable pursuant to the collateral order doctrine.

8. The Governmental Tort Claims and Insurance Reform Act ("Tort Claims Act"), W. Va. Code §§ 29-12A-1 to -18, governs the liability of political subdivisions and their employees in a civil action for damages claiming death, injury, or loss to persons or property, as well as the immunities from those civil actions available to political subdivisions and their employees. To the extent that this Court's decision in *Bender v. Glendenning*, 219 W. Va. 174, 632 S.E.2d 330 (2006) (per curiam), indicates that an insurance policy may alter liabilities or immunities established by the Tort Claims Act, *Bender* is overruled.

9.	West Virginia Code § 29-12A-7(a) prohibits the recovery of punitive damages against a political subdivision employee sued in an official capacity but does not prohibit the recovery of punitive damages against a political subdivision employee sued in an individual capacity.

**BUNN, Justice:**

Petitioners, the Monongalia County Commission ("the Commission") and John Doe Deputy (collectively "Petitioners"), are defendants in a civil action filed in the Circuit Court of Monongalia County by respondent, Amanda F. Stewart ("Ms. Stewart"), individually and/or in her capacity as administrator of the estate of her father John D. Stewart, Jr. Ms. Stewart alleges excessive force was used when her father was shot and killed during his encounter with Monongalia County Deputy Sheriff John Doe. Petitioners appeal an order that denied, in part, their motion to dismiss Ms. Stewart's amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. They assign error to four circuit court rulings that rejected their assertions of statutory and qualified immunity, which are interlocutory rulings subject to immediate appeal pursuant to the collateral order doctrine.[1] We affirm the circuit court's rulings that denied Petitioners' motion, in part, and find Ms. Stewart's complaint is sufficient to preclude Rule 12(b)(6) dismissal as to the Commission's claim of statutory immunity from vicarious liability for John Doe Deputy's negligence and as to John Doe Deputy's asserted immunity from liability for Ms. Stewart's claim alleging negligence/wrongful death. We also affirm the circuit court's rejection of Petitioners' reliance on qualified immunity. However, we reverse the circuit court, in part, and find

---

[1] As explained more thoroughly below in footnote 13, Petitioners raise one interlocutory issue for which immediate appeal pursuant to the collateral order doctrine is not available.

1

Petitioners are immune from Ms. Stewart's demand for punitive damages. Finally, Ms. Stewart raises a cross-assignment of error involving an earlier circuit court order that dismissed her initial complaint, in part, based on the Commission's immunity from direct liability for its policy-making functions. We affirm this ruling by the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case presents an appeal from the circuit court's rulings on motions to dismiss for failure to state a claim.[2] As such, the following facts reflect the allegations in Ms. Stewart's amended complaint, which must be taken as true at this stage of the litigation.[3]

The decedent, Mr. Stewart, resided in a home owned by his sister, Jessica Stewart ("Jessica"), in exchange for monthly installments toward its purchase. Mr. Stewart and Jessica argued over Mr. Stewart's living arrangements and the status of his payments.

---

[2] *See* W. Va. R. Civ. P. 12(b)(6) (providing for the defense of failure to state a claim upon which relief can be granted).

[3] When reviewing a circuit court's ruling on a Rule 12(b)(6) motion to dismiss, we must "presume all of the plaintiff's factual allegations are true, and should construe those facts, and inferences arising from those facts, in the light most favorable to the plaintiff." *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 520, 854 S.E.2d 870, 882 (2020). In providing Ms. Stewart's allegations and deciding this appeal, we do not resolve any disputed facts.

Jessica reported the domestic dispute to 911, and John Doe Deputy,[4] of the Monongalia County Sheriff's Department, responded. Jessica described the situation to the deputy and expressed her desire to evict Mr. Stewart because of his delinquent payments. Jessica also informed the deputy that Mr. Stewart threatened her and played a video of the dispute recorded on her phone.

Mr. Stewart was known to suffer from some degree of mental illness. Ms. Stewart's amended complaint alleges that the deputy suggested Jessica and her children accompany him to the police station to complete a mental hygiene petition. The deputy notified dispatch that he did not require backup assistance, as he did not perceive the situation to involve a criminal matter or present a threat. Jessica agreed to accompany the deputy to the police station; however, against the deputy's advice, Jessica instructed her father, John D. Stewart, Sr., to enter the home and speak with his son, Mr. Stewart. Thereafter, father and son came out of the home arguing.

---

[4] Although Ms. Stewart's amended complaint identifies the defendant deputy as "John Doe Deputy," Petitioners explain, without reference to the record, that Ms. Stewart asked their counsel to accept service of her summons and complaint on behalf of Deputy Jacob Coe. Counsel accepted service as requested and now represents Deputy Coe. Nevertheless, Ms. Stewart's amended complaint still refers to "John Doe Deputy" as a defendant and does not name Deputy Coe. Therefore, in this opinion we refer to "John Doe Deputy" or "the deputy."

John Doe Deputy then radioed dispatch from his cruiser, and the dispatcher told the deputy that there was an active warrant against Mr. Stewart.[5] While the deputy sat in his cruiser, Mr. Stewart approached the vehicle. John Doe Deputy ordered Mr. Stewart to not "come any closer and to back off." The deputy then exited the cruiser by "push[ing] his door open and push[ing]" Mr. Stewart back, telling him to "put his hands behind his back." Mr. Stewart replied "no" and put his fists into a fighting stance.[6] The deputy drew his taser and again directed Mr. Stewart to place his hands behind his back, and Mr. Stewart again answered "no." The deputy holstered his taser[7] and reached to grab Mr. Stewart's wrist. Mr. Stewart pulled away and turned to run toward his home. The deputy responded by deploying pepper spray but missed Mr. Stewart; so, the deputy gave chase.[8] Mr. Stewart

---

[5] Ms. Stewart asserts that the dispatcher was mistaken, and Mr. Stewart had no active warrants at the time.

[6] In her amended complaint, Ms. Stewart relates some of Mr. Stewart's acts during this incident with the preface "[u]pon information and belief, the defendant, John Doe Deputy, asserted that . . . ." Prefacing a statement with "information and belief" means an allegation is "based on secondhand information that the declarant believes to be true." *Information and belief*, *Black's Law Dictionary* (7th ed. 1999). Ms. Stewart's use of this phrase indicates that she believes it is true that John Doe Deputy made the statements describing Mr. Stewart's behavior. However, she also avers that the "positions taken by [Petitioners] . . . do not align with the available evidence." Thus, contrary to Petitioners' interpretation, Ms. Stewart also contends that the evidence does not support the deputy's statements.

[7] Ms. Stewart alleges that John Doe Deputy demonstrated that he "was not physically threatened or intimidated by" Mr. Stewart when he placed the taser back in its holster.

[8] Ms. Stewart contends in her amended complaint that John Doe Deputy's pursuit of Mr. Stewart shows that the deputy did not perceive Mr. Stewart to be a threat.

4

then reached into his left pocket while he looked over his right shoulder and stated that he had a knife. Mr. Stewart spun around after reaching his porch and front door, which caused the deputy to believe Mr. Stewart was attempting to open or "was going to open" his knife. Instead of opting for non-lethal alternatives,[9] the deputy, standing approximately fifteen to twenty-two feet from Mr. Stewart with a porch railing and/or wooden steps separating them, shot his firearm at Mr. Stewart, striking him twice and fatally wounding him. The only weapon in Mr. Stewart's possession was a small unopened pocket or pen knife that fell out of his pocket when emergency medical personnel turned over his body at the scene.

On April 2, 2021, Mr. Stewart's daughter, Ms. Stewart, individually and/or in her capacity as administrator of Mr. Stewart's estate, filed a wrongful death action in the Circuit Court of Monongalia County, naming as defendants the Commission, the Monongalia County Sheriff's Department, Sheriff Perry Palmer, and John Doe Deputy (collectively "Defendants"). Ms. Stewart asserted five counts related to her allegation that John Doe Deputy used excessive force against her father: Excessive force/wrongful death against John Doe Deputy (Count I); Negligence/wrongful death against John Doe Deputy (Count II); Vicarious and/or direct liability against the Commission, the Monongalia County Sheriff's Department, and Sheriff Perry Palmer (Count III); Tort of outrage against all defendants (Count IV); and Strict liability against the Commission, the Monongalia

---

[9] Ms. Stewart identifies these alternatives as including, but not limited to, a taser, pepper spray, retreat, de-escalation, protective cover, and awaiting officer assistance.

5

County Sheriff's Department, and Sheriff Perry Palmer (Count V). She also included a demand for punitive damages in her prayer for relief.

Defendants responded with a Rule 12(b)(6) motion to dismiss, in which, relevant to this appeal, they asserted certain statutory immunities provided by the Governmental Tort Claims and Insurance Reform Act, W. Va. Code §§ 29-12A-1 to -18, ("Tort Claims Act") and qualified immunity as grounds for dismissing Ms. Stewart's claims. On November 8, 2021, the circuit court granted Defendants' motion to dismiss Ms. Stewart's claims seeking to impose liability directly on the Commission[10] but denied the motion to the extent Defendants sought "to dismiss any and all claims of vicarious liability." In doing so, the circuit court relied on the immunity provided in West Virginia Code § 29-12A-5(a)(5) and this Court's decision in Syllabus point 4 of *Albert v. City of Wheeling*, 238 W. Va. 129, 792 S.E.2d 628 (2016). The circuit court also denied Defendants' motion as to the remaining counts of Ms. Stewart's complaint and her demand

---

[10] The circuit court also granted the motion, in part, and dismissed Sheriff Perry Palmer and the Monongalia County Sheriff's Department as party-defendants, finding "the Sheriff's Department and the Monongalia County Commission are the same entities [sic]." *See, e.g.*, Syl. pt. 2, in part, *Beckley v. Crabtree*, 189 W. Va. 94, 428 S.E.2d 317 (1993) (acknowledging that "A sheriff is an employee of a political subdivision, the county commission"), *modified on other grounds by Smith v. Burdette*, 211 W. Va. 477, 566 S.E.2d 614 (2002). As all claims asserted against Sheriff Perry Palmer and the Monongalia County Sheriff's Department, as an entity distinct from the Commission, in Mrs. Stewart's initial complaint have been dismissed, and Ms. Stewart does not name them as defendants in her amended complaint, Sheriff Palmer and the Sheriff's Department are not at issue in this appeal.

for punitive damages and granted her thirty days to amend her complaint to clarify certain causes of action.[11]

Ms. Stewart filed her amended complaint against only the Commission and John Doe Deputy, reiterating the facts set forth in her initial complaint and asserting four claims: Excessive force/wrongful death against John Doe Deputy (Count I); Negligence/wrongful death against John Doe Deputy (Count II); Vicarious liability against the Commission (Count III); and Tort of outrage (Count IV). She again demanded punitive damages in her prayer for relief. Petitioners responded with a motion to dismiss the amended complaint pursuant to Rule 12(b)(6), once more raising, in relevant part, their entitlement to certain immunities pursuant to the Tort Claims Act and qualified immunity. By order entered on September 7, 2022, the circuit court denied Petitioners' motion with respect to Ms. Stewart's claims for excessive force/wrongful death and negligence/wrongful death against John Doe Deputy, vicarious liability against the Commission, and her demand for punitive damages.[12] This appeal followed. Petitioners

---

[11] Petitioners appealed the circuit court's November 8, 2021 order to this Court, and we assigned case number 21-0992 to the appeal. However, on March 1, 2022, Petitioners informed this Court of their "Notice of Removal to Federal Court," filed in the United States District Court for the Northern District of West Virginia. Accordingly, we dismissed their appeal on March 10, 2022. The district court remanded the matter back to the Circuit Court of Monongalia County by order entered on May 17, 2022.

[12] The circuit court found the motion to dismiss was moot as to the count alleging the tort of outrage, because it was "withdrawn and dismissed with prejudice."

7

claim that the circuit court erred by failing to recognize their respective immunities. In her response, Ms. Stewart asserts a cross-assignment of error challenging the circuit court's November 8, 2021 order insofar as it granted the motion to dismiss her initial complaint, in part, as to her direct-liability claim against the Commission. [13]

## II.

## STANDARD OF REVIEW

This case is before us on Petitioners' appeal of an order that denied their motion to dismiss Ms. Stewart's amended complaint, and Ms. Stewart's cross-assignment of error addressing a separate order that granted, in part, Defendants' motion to dismiss her initial complaint. "Our jurisdiction normally does not encompass appeals from the denial or granting of a motion to dismiss where there are remaining issues to be litigated." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 775, 461 S.E.2d 516, 521 (1995). However, to the extent Petitioners challenge circuit court rulings predicated on statutory immunities provided by the Tort Claims Act, an immediate appeal is proper. *See*

---

[13] Petitioners also contend that the circuit court erred by not dismissing Count I of Ms. Stewart's amended complaint because it seeks recovery for a violation of West Virginia Constitution art. III, § 6, and West Virginia law provides no private right of action for a violation of this constitutional provision. This assignment of error does not pertain to any claimed immunity and presents an interlocutory issue that is not properly before us on appeal. *See* Syl. pt. 2, *State ex rel. Arrow Concrete Co. v. Hill*, 194 W. Va. 239, 460 S.E.2d 54 (1995) ("Ordinarily the denial of a motion for failure to state a claim upon which relief can be granted made pursuant to *West Virginia Rules of Civil Procedure* 12(b)(6) is interlocutory and is, therefore, not immediately appealable."). Therefore, we decline to address this assigned error.

8

Syl. pt. 5, *State ex rel. Grant Cnty. Comm'n v. Nelson*, 244 W. Va. 649, 856 S.E.2d 608 (2021) (holding that Civil Procedure Rule 12 permits immediate appeal of a circuit court's denial of a motion to dismiss a complaint, when predicated on Tort Claims Act immunity, pursuant to the collateral order doctrine). For the same reason, we may address the circuit court's rejection of Petitioners' claim of qualified immunity. *See* Syl. pt. 1, *W. Va. Bd. of Educ. v. Marple*, 236 W. Va. 654, 783 S.E.2d 75 (2015) ("A circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine.").

Having established that we may consider this interlocutory appeal, we will exercise plenary review. "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. pt. 2, *Scott Runyan Pontiac-Buick*, 194 W. Va. 770, 461 S.E.2d 516. *Accord* Syl. pt. 2, *W. Va. Div. of Corr. & Rehab. v. Robbins*, 248 W. Va. 515, 889 S.E.2d 88 (2023). While conducting our plenary review, we give attention to "[t]he purpose of a Rule 12(b)(6) motion" to dismiss, which "'is to test the sufficiency of the complaint.'" *WW Consultants, Inc. v. Pocahontas Cnty. Pub. Serv. Dist.*, 248 W. Va. 323, 332, 888 S.E.2d 823, 832 (2023) (quoting *Cantley v. Lincoln Cnty. Comm'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007) (per curiam)). We test the sufficiency of the complaint "by the same rubric applied by the circuit court." *W. Va. Dep't of Hum. Servs. v. A.R.*, 249 W. Va. 590, 596, 900 S.E.2d 16, 22 (2024). Thus, dismissal is proper only where "it appears beyond doubt that [Ms. Stewart] can prove no set of facts in support of

9

[her] claim" that would "entitle [her] to relief." Syl. pt. 3, in part, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977) (citation omitted).

## III.

## DISCUSSION

We first evaluate the sufficiency of Ms. Stewart's amended complaint in relation to the Commission's statutory immunity from her claim seeking to hold it vicariously liable for John Doe Deputy's negligence, and we conclude that the circuit court correctly found the amended complaint is sufficient. In this discussion, we also address Ms. Stewart's related cross-assignment of error. We find the circuit court correctly dismissed Ms. Stewart's claim seeking to hold the Commission directly liable based on the statutory immunity afforded to political subdivisions for their policy-making functions. Second, we examine Petitioners' assertion that the amended complaint failed to plead sufficient facts to overcome John Doe Deputy's statutory immunity for negligence and/or wrongful death, and we determine that Ms. Stewart adequately pled facts to support this claim. Third, we discuss Petitioners' claim of qualified immunity and clarify that, because they are not a state agency or state employee, Petitioners may not claim qualified immunity in this litigation. Finally, we analyze Petitioners' immunity from punitive damages. Because Petitioners are immune from Ms. Stewart's punitive damages demand, the circuit court erred by denying Petitioners' motion to dismiss the demand.

10

### A. The Monongalia County Commission's
### Entitlement to Statutory Immunity From Vicarious Liability
### and Liability for Policy-Making Functions

In Count III of her amended complaint, Ms. Stewart claims that the Commission is vicariously liable for John Doe Deputy's acts performed within the scope of his employment. The circuit court found, based on West Virginia Code § 29-12A-5(a)(5) and this Court's decision in Syllabus point 4 of *Albert*, 238 W. Va. 129, 792 S.E.2d 628, that the Commission had no statutory immunity from Ms. Stewart's vicarious liability claim.[14] Therefore, the circuit court denied Petitioners' motion to dismiss as to Count III. Our resolution of this issue turns on whether Syllabus point 4 of *Albert* applies to the circumstances presented by this case. Petitioners argue that *Albert* applies and affords the Commission immunity from Ms. Stewart's vicarious liability claim, while Ms. Stewart contends that *Albert* concerns only fire protection services and is not controlling precedent for claims of excessive force against law enforcement. Although we are not persuaded by Ms. Stewart's estimation of *Albert's* reach, we agree that the circuit court correctly denied Petitioners' motion to dismiss Count III of her amended complaint.

---

[14] It is unclear how the circuit court reached this conclusion based on *Albert*. Contrary to our earlier precedents, Syllabus point 4 of *Albert* states that a political subdivision has immunity for its policy-making functions and for a loss or claim "caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment." Syl. pt. 4, *Albert v. City of Wheeling*, 238 W. Va. 129, 792 S.E.2d 628 (2016). However, we explain below that *Albert's* holdings are not as broad as Petitioners suggest.

Because the Commission is a political subdivision,[15] the Tort Claims Act exclusively governs its liability in relation to a civil action for damages claiming injury, death, or loss to persons or property, and its entitlement to certain immunities from those claims. *See* W. Va. Code § 29-12A-1 (describing the purposes of the Tort Claims Act).[16] Pursuant to the Tort Claims Act, political subdivisions "are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." W. Va. Code § 29-12A-4(c)(2).[17] However, the immunities provided by West Virginia Code § 29-12A-5 constrain this liability.[18] *See Hose v. Berkeley Cnty. Plan. Comm'n*, 194 W. Va. 515, 521, 460 S.E.2d 761, 767 (1995) ("The plain language of *W. Va. Code*, 29-12A-4(c)(2) [1986] expressly provides that the liability of a political subdivision for injury to property allegedly caused by the negligent

---

[15] *See* W. Va. Code § 29-12A-3(c) (defining "political subdivision" to include "any county commission").

[16] *See also* W. Va Code § 29-12A-4 (addressing political subdivisions' liability for damages); W. Va Code § 29-12A-5 (establishing political subdivisions' immunity from liability); W. Va. Code § 29-12A-18 (describing types of actions to which the Tort Claims Act does not apply); and *Bowden v. Monroe Cnty. Comm'n*, 232 W. Va. 47, 51, 750 S.E.2d 263, 267 (2013) (per curiam) ("The immunity of political subdivisions and their employees . . . is governed exclusively by the [Tort Claims Act].").

[17] West Virginia Code § 29-12A-4(c) enumerates other circumstances for which a political subdivision may be liable that are not applicable to this litigation.

[18] West Virginia Code § 29-12A-6, which pertains to the limitations period for a Tort Claims Act action and prohibits specifying a monetary amount of damages in a complaint, also applies to civil actions for damages against a political subdivision brought pursuant to West Virginia Code § 29-12A-4(c). The parties to this appeal have raised no issue pertaining to § 29-12A-6.

performance of acts by their employees is '*[s]ubject to sections five* and six [§§ *29-12A-5*

and 29-12A-6] of this article.'" (alterations in original)). The Commission asserts immunity

from Ms. Stewart's vicarious liability claims by operation of West Virginia Code

§ 29-12A-5(a)(5), which specifies that "A political subdivision is immune from liability if

a loss or claim results from: . . . (5) Civil disobedience, riot, insurrection or rebellion[,] or

the failure to provide, or *the method of providing, police, law enforcement or fire*

*protection*." (Emphasis added).

To understand the phrase "the method of providing, police, law enforcement

or fire protection" in West Virginia Code § 29-12A-5(a)(5), we briefly review the evolution

of the Court's interpretation of this language. First, in *Randall v. Fairmont City Police*

*Department*, 186 W. Va. 336, 412 S.E.2d 737 (1991), the Court held that this phrase is

parallel to the common-law public duty doctrine and incorporates the common-law special

duty rule:

> *W. Va. Code*, 29-12A-5(a)(5) [1986], which provides,
> in relevant part, that a political subdivision is immune from tort
> liability for "the failure to provide, or the method of providing,
> police, law enforcement or fire protection[,]" is coextensive
> with the common-law rule not recognizing a cause of action
> for the breach of a general duty to provide, or the method of
> providing, such protection owed to the public as a whole.
> Lacking a clear expression to the contrary, that statute
> incorporates the common-law special duty rule and does not
> immunize a breach of a special duty to provide, or the method
> of providing, such protection to a particular individual.

13

Syl. pt. 8, *Randall*, 186 W. Va. 336, 412 S.E.2d 737.[19] In other words, the general rule is

that a political subdivision "cannot be held liable for breaching a general, non-discretionary

duty owed to the public as a whole." *W. Va. State Police v. Hughes*, 238 W. Va. 406, 412,

796 S.E.2d 193, 199 (2017). An exception to this rule applies when "a special relationship

exists" between a political subdivision and an injured person that "gives rise to a duty"

owed to that person by the political subdivision, the breach of which caused the injury. Syl.

pt. 1, in part, *Wolfe v. City of Wheeling*, 182 W. Va. 253, 387 S.E.2d 307 (1989).[20] Thus,

"where a plaintiff's injury has its genesis in alleged 'failure to provide, or the method of

providing' police protection, the political subdivision is immune unless a special

relationship [has] been established between the political subdivision and the injured party."

*City of Marmet v. Hunter,* No. 17-0493, 2018 WL 2263584, at *3 (W. Va. May 17, 2018)

(memorandum decision) (quoting W. Va. Code § 29-12A-5(a)(5)).[21]

---

[19] *See also City of Marmet v. Hunter*, No. 17-0493, 2018 WL 2263584, at *2 (W. Va. May 17, 2018) (memorandum decision) (acknowledging that "West Virginia Code § 29-12A-5(a)(5)[] essentially codif[ies] the common law public duty doctrine"); *Bowden*, 232 W. Va. at 52, 750 S.E.2d at 268 (same).

[20] The existence of a special relationship is determined by the test set out in Syllabus point 2 of *Wolfe v. City of Wheeling*, 182 W. Va. 253, 387 S.E.2d 307 (1989).

[21] *See Daugherty v. McDowell Cnty. Comm'n*, No. 21-0780, 2022 WL 17444572 (W. Va. Dec. 6, 2022) (memorandum decision) (affirming summary judgment in favor of county commission due to lack of special relationship and observing that the special relationship exception to the public duty doctrine is incorporated into W. Va. Code § 29-12A-5(a)(5)); *Bowden*, 232 W. Va. 47, 750 S.E.2d 263 (reversing order dismissing complaint and finding plaintiff's proposed amended complaint sufficiently alleged special relationship exception to immunity provided in West Virginia Code § 29-12A-5(a)(5)); *Holsten v. Massey*, 200 W. Va. 775, 783, 490 S.E.2d 864, 872 (1997) (finding "the

In *Beckley v. Crabtree*, the Court interpreted West Virginia Code § 29-12A-5(a)(5)'s phrase "the method of providing[] police, law enforcement or fire protection" as granting immunity to a political subdivision for decision- and policy-making functions related to police, law enforcement, or fire protection. *See* Syl. pt. 3, *Beckley*, 189 W. Va. 94, 428 S.E.2d 317 (1993), *modified by Smith v. Burdette*, 211 W. Va. 477, 566 S.E.2d 614 (2002). Additionally, the Court held that "Resolution of the issue of whether a loss or claim occurs as a result of 'the method of providing police, law enforcement or fire protection' requires determining whether the allegedly negligent act resulted from the manner in which a formulated policy regarding such protection was implemented." Syl. pt. 4, *id*. In short, if a police, law enforcement, or fire protection employee was negligent while engaged in acts that implemented a formulated policy, *Beckley* provided the political subdivision employer immunity from vicarious liability for the employee's negligence.[22]

---

appellant's assertion that he 'is not required to establish a special duty owed by the county commission and Deputy Greene . . . to establish liability' to be incorrect"). The parties do not address West Virginia Code § 29-12A-5(a)(5)'s codification of the public duty doctrine or the special relationship exception to that general rule.

[22] The *Beckley* Court concluded that a county commission was not immune from a claim resulting from its sheriff negligently shooting a state trooper by discharging a shotgun while placing it in the trunk of a car after completing an arrest. 189 W. Va. 94, 428 S.E.2d 317. The Court reasoned that the trooper's "injury did not result from the implementation of a formulated policy. The methods employed by the law enforcement officers who detained and arrested the suspect were complete before the gun discharged." *Id.* at 98, 428 S.E.2d at 321. Thus, while the "incidental action occurred within the scope of employment, it was not so closely related or necessary to effectuating the arrest as to be considered a component of 'the method of providing law enforcement protection.'" *Id.*

15

Then, in *Smith v. Burdette*, we interpreted the phrase "the method of providing police, law enforcement or fire protection" to refer only to the decision-making or planning aspect of developing policies and determining how policies are to be executed. 211 W. Va. 477, 566 S.E.2d 614 (2002), *overruled in part by Albert v. City of Wheelin*g, 238 W. Va. 129, 792 S.E.2d 628 (2016), *reinstated by* Syl. pt. 5, *Mon. Cnty. v. Stewart*, No. 22-765, ___ W. Va ___, ___ S.E.2d ___ (Nov. 14, 2024). The *Smith* Court concluded that a political subdivision has no immunity for an employee's negligence in implementing a policy related to police, law enforcement, or fire protection:

> The phrase "the method of providing police, law enforcement or fire protection" contained in *W. Va. Code*, 29-12A-5(a)(5) [1986] refers to the decision-making or the planning process in developing a governmental policy, including how that policy is to be performed. To the extent that the holding of the Court is inconsistent with language in *Beckley v. Crabtree*, 189 W. Va. 94, 428 S.E.2d 317 (1993) and its progeny, the holdings in those cases are hereby modified.
>
> *W. Va. Code*, 29-12A-5(a)(5) [1986] does not provide immunity to a political subdivision for the negligent acts of the political subdivision's employee performing acts in furtherance of a method of providing police, law enforcement or fire protection.

Syl. pts. 4 & 5, *Smith*, 211 W. Va. 477, 566 S.E.2d 614.[23]

---

[23] The *Smith* Court reasoned that, "while the City of St. Albans may be immune from liability for negligence in creating a policy of permitting police officers to drive through red-lighted intersections in emergencies, the City may be held liable if a police officer negligently carries out that policy." *Smith v. Burdette*, 211 W. Va. 477, 480-81, 566 S.E.2d 614, 617-18 (2002), *overruled in part by Albert v. City of Wheelin*g, 238 W. Va. 129, 792 S.E.2d 628 (2016), *reinstated by* Syl. pt. 5, *Mon. Cnty. v. Stewart*,

*Albert v. City of Wheeling*, 238 W. Va. 129, 792 S.E.2d 628, is the Court's most recent venture into applying West Virginia Code § 29-12A-5(a)(5). The plaintiff, Ms. Albert, sued the city after the Wheeling Fire Department failed to extinguish a fire burning her home because of rocks that clogged the line and stopped the flow of water. She claimed that the city negligently failed to inspect, maintain, and operate its waterworks and fire hydrant system in an effort to impose liability on the city based on West Virginia Code § 29-12A-4(c)(2) (allowing a political subdivisions to be held liable for the negligence of its employees acting within the scope of their employment), and West Virginia Code § 29-12A-4(c)(3) (allowing a political subdivisions to be held liable for a "negligent failure to keep public . . . aqueducts [and] viaducts . . . open, in repair, or free from nuisance"). The circuit court granted summary judgment in favor of the city based on its fire protection immunity pursuant to § 29-12A-5(a)(5), and Ms. Albert appealed. This Court affirmed.

In analyzing the breadth of the Tort Claims Act immunity granted to the City, the *Albert* Court failed to acknowledge how West Virginia Code § 29-12A-5(a)(5)'s phrase "the method of providing police, law enforcement or fire protection," has been interpreted in our prior decisions as referring to "the decision-making or the planning process in developing a governmental policy." Syl. pt. 4, in part, *Smith*, 211 W. Va. 477, 566 S.E.2d

No. 22-765, ___ W. Va ___, ___ S.E.2d ___ (Nov. 14, 2024). Thus, the Court found that the City of St. Albans was not immune from a claim alleging that an officer negligently drove his cruiser through a red light and collided with the plaintiff's van.

17

614. *See also* Syl. pt. 3, *Beckley*, 189 W. Va. 94, 428 S.E.2d 317. Instead, the *Albert* Court

relied on the fact that the liability provisions in West Virginia Code § 29-12A-4(c)(2) &

(3) are constrained by the immunity provided in West Virginia Code § 29-12A-5(a)(5), and

held,

> Statutory immunity exists for a political subdivision under the provisions of West Virginia Code § 29-12A-5(a)(5) (2013) if a loss or claim results from the failure to provide *fire protection* or the method of providing *fire protection* regardless of whether such loss or claim, asserted under West Virginia Code § 29-12A-4(c)(2) (2013), is caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment. To the extent that this ruling is inconsistent with syllabus point five of *Smith v. Burdette*, 211 W. Va. 477, 566 S.E.2d 614 (2002), the holding as it pertains to the negligent acts of a political subdivision's employee *in furtherance of a method of providing fire protection* is hereby overruled.

Syl. pt. 4, *Albert*, 238 W. Va. 129, 792 S.E.2d 628 (emphasis added).[24] At first glance, this

holding ostensibly applies only in the context of fire protection, but it still represents a

---

[24] To support overruling Syllabus point 5 of *Smith*, *Albert* erroneously found that, in *Smith*, the Court "failed to discuss either our decision in *Hose* [*v. Berkeley Cnty. Plan. Comm'n*, 194 W. Va. 515, 460 S.E.2d 761 (1995)], or the 'subject to' language in [§ 29-12A-4(c)]." *Albert*, 238 W. Va. at 133 n.10, 792 S.E.2d at 632 n.10 (citing *Smith*, 211 W. Va. at 481, 566 S.E.2d at 618). *Albert* concluded that, because of this perceived omission, *Smith* "conflicts with, and cannot be reconciled with, our precedent on the issue of statutory immunity." *Albert*, 238 W. Va. at 133 n.10, 792 S.E.2d at 632 n.10.

Although *Smith* does not discuss *Hose*, *Smith* clearly recognized that West Virginia Code § 29-12A-4(c) was subject to the relevant immunity provided in West Virginia Code § 29-12A-5 when it stated "Pursuant to *W. Va. Code*, 29-12A-4(c) [1986], a political subdivision is generally liable for damages caused by the negligent acts of its employees when the employees are acting within the scope of their employment. There are, however, several specific exceptions to this general rule of liability." *Smith*, 211

significant departure from our prior interpretation of West Virginia Code § 29-12A-5(a)(5) by concluding that it extends immunity to political subdivisions for the negligence of employees acting within the scope of their employment. However, to give *Albert's* holding proper context, we must examine it in light of the Court's analysis and other holdings in the opinion.

Notably, the *Albert* Court observed that Ms. Albert "sought to disguise the essence of her claim through creative pleading," by attempting to divorce her fire protection claim "from matters of fire protection or policy implementation." *Albert*, 238 W. Va. at 134, 792 S.E.2d at 633. Yet in the following excerpt, the Court explained that, despite the absence of negligence claims against the firefighters themselves, the heart of Ms. Albert's claim was simply the fire:

> the record in this case makes clear that *but for the fire* this matter would not be before us. Upon analysis, virtually every aspect of the petitioner's case arises from the City's efforts to squelch that fire. Were it not for the need to dispatch the fire department in response to the subject fire and were it not for the unsuccessful efforts of the fire department to contain the flames, the petitioner would not have filed the underlying lawsuit. Similarly, but for the need to utilize water to suppress the fire, the purported existence of rocks in the water line would not be at issue. Each and every fact upon which the petitioner relies to assert her claim is inexorably linked to the fire at her home which the City was not able to extinguish.

---

W. Va. at 479-80, 566 S.E.2d at 616-17 (footnote omitted). In this context, the *Smith* Court proceeded to discuss the immunity provided by West Virginia Code § 29-12A-5(a)(5). Plainly, *Smith* presents no conflict in this regard and corresponds with our statutory immunity precedent.

19

*Id.* Accordingly, we must read the immunity-related holdings in *Albert* in the context of a claim seeking to hold a city liable for negligent conduct by non-fire protection employees who are performing acts directly connected to fire protection. In this respect, *Albert* also holds,

> Statutory immunity exists for a political subdivision under West Virginia Code § 29-12A-5(a)(5) (2013) if a loss or claim results from the failure to provide fire protection or the method of providing fire protection regardless of whether such loss or claim, asserted under West Virginia Code § 29-12A-4(c)(3) (2013), is caused by the negligent failure of the political subdivision to maintain, inspect and otherwise keep its waterworks and fire hydrant system fully operable.

> For purposes of the immunity provided by West Virginia Code § 29-12A-5(a)(5) (2013), a municipality's policy of inspecting and maintaining its fire hydrants is directly connected to the city's method of providing fire protection.

Syl. pts. 5 & 6, *Albert*, 238 W. Va. 129, 792 S.E.2d 628. Therefore, we hold that the interpretations of West Virginia Code § 29-12A-5(a)(5) set out in Syllabus points 4, 5, & 6 of *Albert v. City of Wheeling*, 238 W. Va. 129, 792 S.E.2d 628 (2016), are hereby limited and apply only to a political subdivision's immunity against claims seeking to hold it vicariously liable for negligent conduct by its employees who are not employed in a police, law enforcement, or fire protection capacity, but who are performing acts in the course of their employment that are directly connected to police, law enforcement, or fire protection. We further hold that, because *Smith v. Burdette*, 211 W. Va. 477, 566 S.E.2d 614 (2002), did not involve negligent conduct by political subdivision employees who are not employed in a police, law enforcement, or fire protection capacity performing acts directly

20

connected to police, law enforcement, or fire protection in the course of their employment, Syllabus point 5 of *Smith* was erroneously overruled in Syllabus point 4 of *Albert v. City of Wheeling*, 238 W. Va. 129, 792 S.E.2d 628 (2016).[25]

In the case before us, Ms. Stewart's vicarious liability claim against the Commission alleges negligent acts[26] by a police officer, and, as such, *Albert* does not preclude her claims. Applying *Smith*, the Commission is not immune from liability for Ms. Stewart's claims arising from John Doe Deputy's alleged negligence to the extent that he was acting within the scope of his employment and "in furtherance of a method of providing police [or] law enforcement . . . .protection." Syl. pt. 5, in part, *Smith*, 211 W. Va. 477, 566 S.E.2d 614. *See also* W. Va. Code § 29-12A-5(a)(5). Thus, the circuit court did not err by denying Petitioners' motion to dismiss Count III of Ms. Stewart's amended complaint.

In a related cross-assignment of error, Ms. Stewart argues that the circuit court erred by concluding that the only claim she could pursue against the Commission was her claim for vicarious liability, asserted in Count III of her initial complaint. In other

---

[25] *See supra* note 24.

[26] Ms. Stewart does not explicitly state that she seeks to hold the Commission responsible only for John Doe Deputy's negligent acts, however, the Commission is liable only for "injury, death, or loss" caused by John Doe Deputy's "negligent" acts while acting in the scope of his employment. *See* W. Va. Code § 29-12A-4(c)(2).

21

words, she claims the circuit court erred by finding that West Virginia Code § 29-12A-5(a)(5) granted the Commission immunity from direct liability to Ms. Stewart. We find no error.[27] The only conduct by the Commission alleged in Count III of the initial complaint is that it had "authority to formulate, implement, and administer the policies, customs, and practices of [the] Monongalia County Sheriff's Department," and that the Sheriff's Department[28] "promulgated, promoted, implemented, formulated, and/or administered a number of policies, customs, and/or practices that violated the constitutional rights guaranteed to" Mr. Stewart. We have established that West Virginia Code § 29-12A-5(a)(5) provides immunity to political subdivisions for "decision-making or the planning process in developing a governmental policy, including how that policy is to be performed." Syl. pt. 4, in part, *Smith*, 211 W. Va. 477, 566 S.E.2d 614. Because Ms. Stewart sought to hold the Commission directly liable only for its policy-making functions, the circuit court did not err by applying West Virginia Code § 29-12A-5(a)(5), dismissing the direct liability claims asserted in Count III, and ruling that Ms. Stewart could pursue only her vicarious liability claims.

---

[27] Although her claimed error pertains to the Commission's potential direct liability, Ms. Stewart's confounding argument on this issue appears to characterize her claim against the Commission as one for excessive force, a claim for which the Commission could only be vicariously liable. Her analysis also largely refers to instances involving a political subdivision's vicarious liability for the negligent acts of its employee.

[28] The circuit court found that "the Sheriff's Department and the Monongalia County Commission are the same entities [sic]." *See supra* note 10 for additional information.

To summarize, we affirm the circuit court's denial of Petitioners' motion to dismiss Count III of Ms. Stewart's amended complaint, because the Commission is not immune from vicarious liability for claims arising from John Doe Deputy's negligence when acting within the scope of his employment and in furtherance of a method of providing police, law enforcement, or fire protection. We also affirm the circuit court's dismissal, in part, of Count III of Ms. Stewart's initial complaint, to the extent she sought to impose direct liability on the Commission for its policy-making functions.

### B. Sufficiency of Allegations to Overcome John Doe Deputy's Tort Claims Act Immunity

Ms. Stewart pled negligence and/or wrongful death claims against John Doe Deputy in Count II of her amended complaint. Petitioners argued in their motion to dismiss that Ms. Stewart's complaint lacked sufficient factual allegations to overcome the Tort Claims Act immunity provided to political subdivision employees. *See* W. Va. Code § 29-12A-5(b). The circuit court denied Petitioners' motion as to Count II. We find no error.

On appeal, Petitioners rely on federal standards for a motion to dismiss to support their argument that Ms. Stewart's amended complaint is insufficient to overcome John Doe Deputy's statutory immunity. They argue that the amended complaint relies on conclusory allegations, such as stating that the decedent "posed no physical threat" or that

23

"deadly force was not authorized and/or justified by the circumstances," that are insufficient to overcome immunity. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009) ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). However, this Court has stated that West Virginia's pleading standard is less demanding than its federal counterpart. *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 521 n.4, 854 S.E.2d 870, 883 n.4 (2020) ("West Virginia Rules of Civil Procedure 8 and 12, along with our interpretation of those rules, are more generous and weighted toward resolving cases on their merits than what is allowed by federal courts under the federal rules."). Ms. Stewart contends that her alleged facts are sufficient to suggest John Doe Deputy acted maliciously, in bad faith, or in a wanton or reckless manner.[29]

West Virginia courts generally apply a notice pleading paradigm and read complaints liberally when testing them alongside the requirements of Rule 8 of the West

---

[29] In her discussion of this issue, Ms. Stewart ambiguously references West Virginia Code § 29-12A-5(a)(5), which addresses an immunity provided to political subdivisions, not employees of political subdivisions. As such, West Virginia Code § 29-12A-5(a)(5) has no application to our analysis of Ms. Stewart's claim against John Doe Deputy. Ms. Stewart also relies, in part, on an opinion provided by her expert. However, she fails to explain how we may properly consider this expert opinion in analyzing the circuit court's ruling on Petitioners' motion to dismiss. *See* Syl. pt. 4, in part, *Mountaineer Fire*, 244 W. Va. 508, 854 S.E.2d 870 ("Only matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P." (quotations and citation omitted)).

Virginia Rules of Civil Procedure to ensure that a circuit court or opposing party can understand the character and validity of the claim alleged. *See WW Consultants,* 248 W. Va. at 332, 888 S.E.2d at 832 (recognizing "The purpose of a Rule 12(b)(6) motion 'is to test the sufficiency of the complaint'" (citation omitted)). However, when a civil claim implicates statutory immunity, the circuit court must insist on a heightened pleading standard. *See Hutchison v. City of Huntington*, 198 W. Va. 139, 149, 479 S.E.2d 649, 659 (1996). We mandate this heightened pleading because statutory immunity "'is an *immunity from suit* rather than a mere defense to liability'" and it is "'effectively lost if the case is erroneously permitted to go to trial.'" *State ex rel. City of Bridgeport v. Marks*, 233 W. Va. 449, 456, 759 S.E.2d 192, 199 (2014) (quoting *Hutchison*, 198 W. Va. at 147, 479 S.E.2d at 657). Its purpose is to "bridge the gaps between the notice-pleading standard, a political subdivision's need [to 'ascertain] whether it has an immunity defense' early in the proceedings, and the onus placed on the plaintiff to respond to a political subdivision's assertion of immunity under § 29-12A-5(a)." *Jones v. Logan Cnty. Bd. of Educ.*, 247 W. Va. 463, 471, 881 S.E.2d 374, 382 (2022) (footnotes omitted) (quoting *Doe v. Logan Cnty. Bd. of Educ.*, 242 W. Va. 45, 51, 829 S.E.2d 45, 51 (2019)). Accordingly, "local government units should be entitled to . . . statutory immunity under W. Va. Code, 29-12A-5[], unless it is shown by specific allegations that the immunity does not apply." *Hutchison*, 198 W. Va. at 148, 479 S.E.2d at 658.

The Tort Claims Act provides three exceptions to the immunity it grants political subdivision employees:

> West Virginia Code § 29-12A-5(b) provides that employees of political subdivisions are immune from personal tort liability unless "(1) [h]is or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [h]is or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) [l]iability is expressly imposed on the employee by a provision of this code."

Syl. pt. 1, *Beckley*, 189 W. Va. 94, 428 S.E.2d 317 (alterations in original). Ms. Stewart relies on the second exception to political subdivision employee immunity; thus, we consider whether the facts alleged in her complaint, and the inferences arising from them, when viewed most favorably to Ms. Stewart, convey that John Doe Deputy's "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." W. Va. Code § 29-12A-5(b)(2). This exception describes a state of mind, which Ms. Stewart may allege generally with supporting facts. *See* W. Va. R. Civ. P. 9(b) (stating in relevant part, "Malice, intent, knowledge and other condition of mind of a person may be averred generally"). Furthermore, she "is not required to anticipate the defense of immunity in [her] complaint." *Hutchison*, 198 W. Va. at 150, 479 S.E.2d at 660.[30]

---

[30] The *Hutchison* Court encouraged circuit courts to consider court ordered replies and motions for a more definite statement before a complaint is dismissed based upon a defendant's statutory immunity defense. *See Hutchison v. City of Huntington*, 198 W. Va. 139, 150, 479 S.E.2d 649, 660 (1996).

26

Ms. Stewart's amended complaint alleges that the deputy failed to de-escalate the situation involving her father, Mr. Stewart, who suffered from mental illness. It also alleges that the deputy declined backup assistance, pursued Mr. Stewart, and while at a distance of fifteen to twenty-two feet away from Mr. Stewart, opened fire and shot Mr. Stewart twice, fatally wounding him. The complaint further alleges that Mr. Stewart never drew a knife on the deputy, and the only knife found at the scene was a small pocket or pen knife that, still closed, fell out of Mr. Stewart's pocket when emergency responders turned over his body. Additionally, Ms. Stewart alleged that John Doe Deputy's "acts and/or omissions" were done with "malicious purpose, in bad faith, or in a wanton or reckless manner." *See* W. Va. Code § 29-12A-5(b)(2).

Applying the heightened pleading standard for claims that implicate statutory immunities, these allegations are sufficiently specific to communicate Ms. Stewart's claim that John Doe Deputy's "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner," and to deprive him of statutory immunity pursuant to the exception provided by the Tort Claims Act at this stage of the litigation.[31] W. Va. Code § 29-12A-5(b)(2). *See also Scott Runyan Pontiac-Buick*, 194 W. Va. at 776, 461 S.E.2d at 522 ("[A] complaint must be intelligibly sufficient for a circuit court or an opposing party

---

[31] *See Mountaineer Fire*, 244 W. Va. at 520, 854 S.E.2d at 882 ("A court reviewing the sufficiency of a complaint . . . should presume all of the plaintiff's factual allegations are true, and should construe those facts . . . in the light most favorable to the plaintiff.").

27

to understand whether a valid claim is alleged and, if so, what it is."). Accordingly, the circuit court did not err by rejecting John Doe Deputy's claim of immunity and denying Petitioners' Rule 12(b)(6) motion to dismiss Count II of Ms. Stewart's complaint, and we affirm this decision.

## C. Qualified Immunity

Petitioners argue that they are protected by qualified immunity, and, therefore, the circuit court erred by failing to dismiss Ms. Stewart's amended complaint. However, Petitioners' argument is meritless because qualified immunity is not an alternative immunity for political subdivisions or their employees to fall back on when they cannot claim Tort Claims Act immunity. Instead, subject to limited exceptions set out in the Act,[32] the Tort Claims Act exclusively governs the exposure of political subdivisions and their employees to liability for civil actions seeking damages for death, injury, or loss to persons or property, and the availability of immunities to protect them from such claims. *See, e.g.*, W. Va. Code § 29-12A-4 (delineating a political subdivision's liability for damages); W. Va. Code § 29-12A-5 (establishing immunities from liability).

Indeed, "It is well established that . . . common law qualified immunity [is] available only for the State, its agencies, officials, and/or employees." *Kent v. Sullivan*, 249

---

[32] West Virginia Code § 29-12A-18 describes five types of civil action that are outside the scope of the Tort Claims Act.

W. Va. 747, 752, 901 S.E.2d 500, 505 (2024). *See also W. Va. Reg'l Jail & Corr. Facility Auth. v. Estate of Grove*, 244 W. Va. 273, 283, 852 S.E.2d 773, 783 (2020) ("[W]e have developed a significant body of law in order to determine whether a state agency, a state employee, or both are entitled to be protected from suit by the doctrine of qualified immunity."). Petitioners are a political subdivision and a political subdivision employee. They are not the State, a state agency, a state official, or a state employee. We note that qualified immunity may be available under federal law when "public officers are sued in state court for violations of federal civil rights pursuant to 42 U.S.C. § 1983," even when the defendant is a political subdivision or subdivision employee. *City of Saint Albans v. Botkins*, 228 W. Va. 393, 398, 719 S.E.2d 863, 868 (2011). In a case alleging a § 1983 violation, the immunity provisions of the Tort Claims Act simply do not apply. *See* W. Va. Code § 29-12A-18(e) (stating that the Tort Claims Act does not apply to "[c]ivil claims based upon alleged violations of the constitution or statutes of the United States except that the provisions of section eleven [§ 29-12A-11] of this article shall apply to such claims or related civil actions").[33] Ms. Stewart does not assert a 42 U.S.C. § 1983 claim against John Doe Deputy. In fact, she states in her amended complaint that her excessive force claim "specifically is not filed pursuant to 42 U.S.C. § 1983 or any other related federal statute."

---

[33] West Virginia Code § 29-12A-11 addresses a political subdivision's obligation to provide a defense and indemnification to employees.

We clarified that political subdivisions may not assert qualified immunity in our holding, issued during this term of court, stating "A party that meets the statutory definition of a political subdivision or employee found in The Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-3, is not entitled to qualified immunity solely on the basis that the claims alleged against them fall within the exceptions to statutory immunity set forth in West Virginia Code § 29-12A-18." Syl. pt. 3, *Mercer Cnty. Bd. of Educ. v. Shrewsbury*, No. 22-745, ___ W. Va. ___, ___ S.E.2d ___ (Nov. 12, 2024). Therefore, Petitioners have no entitlement to qualified immunity in this litigation. The circuit court did not err by denying their motion to dismiss Ms. Stewart's amended complaint based on qualified immunity, and we affirm its ruling.

### *D. Punitive Damages*

Ms. Stewart included a demand for punitive damages in her prayer for relief. Petitioners argued in their motion to dismiss Ms. Stewart's amended complaint that her demand failed because the Tort Claims Act afforded them immunity from punitive damages. The circuit court denied the motion to dismiss as to punitive damages, stating that dismissal was premature, and that it would revisit the propriety of a claim for such damages after the close of discovery.

On appeal, Petitioners argue that the Tort Claims Act prohibits awarding punitive damages against the Commission and John Doe Deputy in this case. *See* W. Va.

30

Code § 29-12A-7(a) (disallowing punitive damages); *Huggins v. City of Westover Sanitary Sewer Bd.*, 227 W. Va. 573, 579, 712 S.E.2d 482, 488 (2011) (per curiam) (providing punitive damages are not recoverable against employee of political subdivision named in an official capacity). Treating the punitive damages provision as an immunity, Petitioners contend that, because this provision cannot be waived through an insurance policy, insurance-related discovery on punitive damages is pointless. *See* W. Va. Code § 29-12A-16(d) (proscribing waiver of Tort Claims Act immunities by purchasing liability insurance). Ms. Stewart does not dispute that the Tort Claims Act generally bars punitive damages claims against political subdivisions and their employees, but she insists that the circuit court properly deferred ruling on their availability because discovery is necessary to determine the existence and scope of available insurance coverage. She explains that Petitioners may have waived their punitive damages immunity by purchasing insurance coverage to indemnify them for such damages. *See Bender v. Glendenning*, 219 W. Va. 174, 632 S.E.2d 330 (2006) (per curiam) (finding insurance waived Tort Claims Act immunity). She additionally contends that discovery is warranted to determine whether John Doe Deputy was acting outside the scope of his employment such that an award of punitive damages against him may be proper. We find the circuit court erred by failing to dismiss Ms. Stewart's demand for punitive damages.

Before addressing the merits of this issue, we pause to consider whether the Tort Claims Act prohibition on punitive damages is an immunity, because if it is not, then

31

this issue is interlocutory and not properly before us in this appeal. *See Erie Ins. Co. v. Dolly*, 240 W. Va. 345, 353, 811 S.E.2d 875, 883 (2018) ("'[O]rdinarily, the denial of a motion to dismiss is an interlocutory order and, therefore, is not immediately appealable.'" (alteration in original) (quoting *Ewing v. Bd. of Educ.*, 202 W. Va. 228, 235, 503 S.E.2d 541, 548 (1998))). Punitive damages are addressed in West Virginia Code § 29-12A-7, which states:

> Notwithstanding any other provisions of this code or rules of a court to the contrary, in an action against a political subdivision or its employee to recover damages for injury, death, or loss to persons or property . . . caused by an act or omission of such political subdivision or employee:
>
> (a) In any civil action involving a political subdivision or any of its employees as a party defendant, an award of punitive or exemplary damages against such political subdivision is prohibited.

While not expressly identified as an immunity, this provision operates as one.[34] *See Immunity*, *Black's Law Dictionary* (10th ed. 2014) (defining immunity as "[a]ny exemption from a duty, liability, or service of process; esp., such an exemption granted to a public official or government unit"). *See also Robinette v. Judy*, No. 1:15-CV-25, 2015 WL 7272378, at *6 (N.D.W. Va. Apr. 28, 2015) (treating West Virginia Code § 29-12A-7(a) as immunizing political subdivision and employees sued in their official capacity from

---

[34] Other immunities from liability afforded by the Tort Claims Act are addressed in West Virginia Code § 29-12A-5, which lists various functions and circumstances for which political subdivisions are immune. *See* W. Va. Code § 29-12A-5(a). This provision also identifies the circumstances under which political subdivision employees may be deprived of immunity. *See* W. Va. Code § 29-12A-5(b).

punitive damages), *report and recommendation adopted*, 2015 WL 7258507 (N.D.W. Va. Nov. 17, 2015). Accordingly, we hold that the prohibition of punitive or exemplary damages in West Virginia Code § 29-12A-7(a) operates as an immunity. As such, a circuit court's denial of a motion to dismiss a claim for punitive or exemplary damages predicated on this immunity is immediately appealable pursuant to the collateral order doctrine. *See, e.g.*, Syl. pt. 1, *Kent*, 249 W. Va. 747, 901 S.E.2d 500; Syl. pt. 5, *State ex rel. Grant Cnty. Comm'n*, 244 W. Va. 649, 856 S.E.2d 608.

On the merits, we first address whether the Tort Claims Act grants the Commission immunity from punitive damages pursuant to West Virginia Code § 29-12A-7(a). To resolve this issue, we need only apply the plain statutory language, which unambiguously prohibits an award of punitive damages against a political subdivision. Syl. pt. 1, *Jarrell v. State Workmen's Comp. Comm'r*, 152 W. Va. 418, 163 S.E.2d 798 (1968) ("When a statute is clear and unambiguous and the legislative intent is plain, it is the duty of the courts to apply the statute in accordance with the legislative intent therein clearly expressed."). *See also Kent*, 249 W. Va. at 755, 901 S.E.2d at 508 (recognizing that West Virginia Code § 29-12A-7(a) disallows punitive damages against political subdivisions); *Randall*, 186 W. Va. at 342, 412 S.E.2d at 743 (same).

Despite this clear statutory prohibition of punitive damages, Ms. Stewart contends that discovery concerning the scope of insurance coverage purchased by

33

Petitioners is necessary to determine whether they have waived their punitive damages immunity. As support for this argument, Ms. Stewart relies on the per curiam opinion in *Bender v. Glendenning*, where the Court found that "when a policy of insurance provides coverage for a political subdivision, the terms of such insurance contract determine the rights and responsibilities of the insurer and its insured(s)." 219 W. Va. at 179, 632 S.E.2d at 335.[35] According to the *Bender* Court, an insurance policy must specifically preserve Tort Claims Act immunities to avoid their waiver: "the existence of an insurance policy does not per se eliminate the grants of immunity provided by the Act *unless the policy fails to include appropriate language and/or exclusions which specifically preserve the Act's immunity provisions." Id.*, at 179-80, 632 S.E.2d at 335-36 (emphasis added).

*Bender* directly contravenes the legislative mandate directing that "[t]he purchase of liability insurance, or the establishment and maintenance of a self-insurance program, by a political subdivision does not constitute a waiver of any immunity it may have pursuant to this article or any defense of the political subdivision or its employees."

---

[35] *Bender* involved a civil action against a teacher brought by victims of his sexual abuse and/or assault of students. The Court found that, because a policy of insurance issued to the county board of education provided coverage for the teacher's wrongful acts and did not specifically preserve Tort Claims Act immunities, the terms of the policy, and not the Act, defined the scope and extent of the board's and teacher's liability. *Bender v. Glendenning*, 219 W. Va. 174, 632 S.E.2d 330 (2006).

W. Va. Code § 29-12A-16(d).[36] Furthermore, this Court has not followed *Bender's* conclusion that an insurance policy has more force than legislatively promulgated statutory law with respect to the liabilities imposed on, and the immunities afforded to, political subdivisions and their employees. *See, e.g.*, *Jenkins v. City of Elkins*, 230 W. Va. 335, 342, 738 S.E.2d 1, 8 (2012) (distinguishing *Bender* and commenting that, because it is a per curiam opinion, "as a fundamental matter, this Court did not change or alter any law in *Bender*"); *Moses v. City of Moundsville*, No. 16-0680, 2017 WL 1347704, at *2 (W. Va. Apr. 7, 2017) (memorandum decision) (rejecting the petitioner's reliance on *Bender*, and enforcing West Virginia Code § 29-12A-5(a)(11), which grants immunity to political subdivisions for claims covered by workers' compensation or employer's liability law).

To avoid the potential for confusion caused by the *Bender* opinion, we now hold that, the Governmental Tort Claims and Insurance Reform Act ("Tort Claims Act"), W. Va. Code §§ 29-12A-1 to -18, governs the liability of political subdivisions and their employees in a civil action for damages claiming death, injury, or loss to persons or property, as well as the immunities from those civil actions available to political subdivisions and their employees. To the extent that this Court's decision in *Bender v. Glendenning*, 219 W. Va. 174, 632 S.E.2d 330 (2006) (per curiam), indicates that an

---

[36] *Bender* merely cited this statute with the signal "*but see*," and characterized it as "indicating that political subdivision's purchase of an insurance policy does not *automatically* waive immunity provided by the Act." 219 W. Va. at 179, 632 S.E.2d at 335 (emphasis added).

insurance policy may alter liabilities or immunities established by the Tort Claims Act, *Bender* is overruled. Because West Virginia Code § 29-12A-7(a) plainly prohibits Ms. Stewart from recovering punitive damages from the Commission, a political subdivision, the circuit court erred by denying Petitioners' motion to dismiss as to Ms. Stewart's demand for punitive damages against the Commission.

Turning to Ms. Stewart's demand for punitive damages against John Doe Deputy, this Court has recognized that West Virginia Code § 29-12A-7(a) prohibits an award of punitive damages against a political subdivision employee sued in an official capacity, but it permits the recovery of such damages from an employee sued in his or her individual capacity. *See Huggins*, 227 W. Va. at 578-79, 712 S.E.2d at 487-88 (observing that availability of punitive damages against political subdivision employee pursuant to West Virginia Code § 29-12A-7(a) "turns on whether" the employee "was sued in his individual capacity, which would allow an assessment of punitive damages, if warranted," and concluding that plaintiff was prohibited from recovering punitive damages from mayor sued only in his official capacity); *Arbaugh v. Bd. of Educ., Cnty. of Pendleton*, 329 F. Supp. 2d 762, 771 (N.D.W. Va. 2004) (applying "the unequivocal command" of West Virginia Code § 29-12A-7(a) and finding plaintiff was not entitled to punitive damages against school principal sued for acts within the scope of his employment). We therefore expressly hold that West Virginia Code § 29-12A-7(a) prohibits the recovery of punitive damages against a political subdivision employee sued in an official capacity but does not

36

prohibit the recovery of punitive damages against a political subdivision employee sued in an individual capacity.

Thus, our determination of whether the circuit court erred by failing to dismiss Ms. Stewart's demand for punitive damages against John Doe Deputy depends upon whether Ms. Stewart sued the deputy in an individual capacity. Ms. Stewart argues that discovery into the deputy's conduct is warranted to determine whether he may be deprived of the protections of the Act pursuant to West Virginia Code § 29-12A-5(b), and the definitions for "employee" and "scope of employment" provided in West Virginia Code § 29-12A-3(a) & (d),[37] which, she reasons, would expose him to punitive damages. In making these arguments, Ms. Stewart fails to appreciate that her complaint drives our determination of whether she has sued Mr. Doe in his individual capacity. *See Huggins*, 227 W. Va. at 579, 712 S.E.2d at 488 ("The underlying complaint filed in the circuit court is controlling to our decision. We have reviewed the complaint and have failed to find any language that would suggest that Mayor Johnson was sued in his individual capacity. Because the complaint failed to set out a cause of action against Mayor Johnson in his

---

[37] Notably, in her brief to this Court, Ms. Stewart clarified that to overcome the immunity provided to John Doe Deputy pursuant to the Tort Claims Act, she relied on the exception provided in West Virginia Code § 29-12A-5(b)(2), which applies when the employee's "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." *Id.* She did not argue that the deputy's "acts or omissions were manifestly outside the scope of employment or official responsibilities." W. Va. Code § 29-12A-5(b)(1).

37

individual capacity, the circuit court was correct in finding that Mr. Huggins could not recover punitive damages.").

Ms. Stewart's complaint contains no language indicating that she sued the deputy in his individual capacity. The complaint names John Doe Deputy only in his capacity as a deputy, and Ms. Stewart does not refer to him in his individual capacity.[38] Furthermore, the conduct alleged in the complaint describes functions a deputy sheriff would perform in the course of his employment, further indicating that Ms. Stewart sued the deputy only in his official capacity. Because Ms. Stewart did not sue the deputy in an individual capacity, she is not entitled to recover punitive damages against him, and the circuit court erred by denying Petitioners' motion to dismiss as to Ms. Stewart's demand for punitive damages against John Doe Deputy.

To summarize, West Virginia Code § 29-12A-7(a) prohibits Ms. Stewart from demanding punitive damages from the Commission because it is a political subdivision and further prohibits Ms. Stewart from demanding punitive damages from John Doe Deputy because she sued him only in his official capacity. Therefore, the circuit court

---

[38] By contrast, Ms. Stewart acknowledged her own dual capacity in this litigation by specifically naming herself in the style of her amended complaint as "Amanda F. Stewart, *individually* and/or in her capacity as administratrix of the estate of John D. Stewart, Jr." (emphasis added).

erred by denying Petitioners' motion to dismiss Ms. Stewart's amended complaint to the extent it sought punitive damages, and we reverse these rulings.

## IV.

## CONCLUSION

We affirm the order entered by the Circuit Court of Monongalia County on September 7, 2022, to the extent that it denied Petitioners' motion to dismiss (A) Count III of Ms. Stewart's amended complaint, because the Commission is not immune from vicarious liability for John Doe Deputy's negligence when acting within the scope of his employment; (B) Count II of Ms. Stewart's amended complaint, because she pled sufficient facts to deprive John Doe Deputy of his Tort Claims Act immunity pursuant to W. Va. Code § 29-12A-5(b)(2) at the early stage of the litigation; and (C) Ms. Stewart's complaint in its entirety, because Petitioners are not entitled to qualified immunity. We also affirm the order entered by the Circuit Court of Monongalia County on November 8, 2021, insofar as it granted Defendants' motion to dismiss, in part, Count III of Ms. Stewart's initial complaint, because she sought to hold the Commission directly liable for its policy-making functions.

We reverse the order entered by the Circuit Court of Monongalia County on September 7, 2022, to the extent that it denied Petitioners' motion to dismiss Ms. Stewart's demand for punitive damages against the Commission and John Doe Deputy. We remand

39

with instructions to enter an order dismissing Ms. Stewart's demand for punitive damages against the Commission and John Doe Deputy, and for further proceedings consistent with this opinion.

Affirmed in part, Reversed in part, and Remanded.